DR. CARLOS ROVIRA PALÉS, demandante y recurrente, *v.* PUERTO RICO TELEPHONE COMPANY, demandada y recurrida; RUFINO BORRERO CARTAGENA, demandante y recurrente, *v.* PUERTO RICO TELEPHONE COMPANY, demandada y recurrida; JOSÉ M. EMMANUELLI ET AL., demandantes y recurridos, *v.* PUERTO RICO TELEPHONE COMPANY, demandada y recurrente; MARY GONZÁLEZ RIVERA, demandante y recurrida *v.* PUERTO RICO TELE- PHONE COMPANY, demandada y recurrente.

*Números:* R-65-223, *Resueltos:* 14 de mayo de 1968
R-66-24,
R-66-60,
R-67-5

*Fernando Gallardo Díaz,* abogado de los recurrentes en los Casos 65-3571 y 65-5434; *McConnell, Valdés, Kelley & Sifre y Baltazar Corrada,* abogados de la recurrida en los Casos 65-3571 y 65-5434, y de la recurrente en los Casos CS-64-3558 y CS-63-3387; *Enrique Clavell Borrás, amicus curiae* en el Caso 65-3571; *Baragaño, Trías, Saldaña, Harris & Francis* y *C. Arzuaga Algarín, amici curiae* en los Casos 65-3571, 65-5434 y CS-64-3558; *Héctor Lugo Bougal, Delia Lugo Bougal y Delia María Auffant,* abogados de los recurridos en el Caso CS-64-3558.

El Juez Asociado Señor Blanco Lugo emitió la opinión del Tribunal.

Estos recursos, que han sido consolidados a los fines de su decisión, surgen al margen de diferencias de criterio de distintas salas del Tribunal Superior sobre el alcance e interpretación de los Arts. 20 y 66 de la vigente Ley de Servicio Público, Núm. 109 de 28 de junio de 1962, 27 L.P.R.A. secs. 1107 y 1277. Se iniciaron mediante pleitos presentados por cuatro usuarios de la Puerto Rico Telephone Co. con motivo de habérseles suspendido el servicio telefónico de que venían disfrutando. Rovira, Borrero y González se limitaron a alegar que la suspensión no obedeció a motivo justificado; Emmanuelli, que la interrupción fue hecha bajo el pretexto de que no se encontraba al día en sus pagos mensuales cuando en efecto nada adeudaba.

No es necesario que consideremos la aplicación de la conocida doctrina del Derecho administrativo sobre "jurisdicción primaria." *E.L.A.* v. *12,974.78 Metros Cuadrados,* 90 D.P.R. 506 (res. en 2 de junio de 1964) y casos allí citados; *Medina* v. *Pons,* 81 D.P.R. 1 (1959); Cooper, *State Administrative Law,* (1965) vol. 2, págs. 562–572; Jaffe, *Judicial Control of Administrative Action* (1965), págs. 121–

141; Davis, *Administrative Law Treatise* (1958), vol. 3, § 19.01–19.09. El planteamiento de las partes se reduce a uno de interpretación estatutaria: la Compañía sostiene que en virtud del Art. 20 la Comisión de Servicio Público tiene jurisdicción exclusiva para entender en casos como el presente; los usuarios insisten en que el Art. 66 hace por sus propios términos coextensiva la jurisdicción a los tribunales y que se trata meramente de una elección de foro. En este sentido su posición parece admitir que en ausencia del Art. 66 la jurisdicción exclusiva correspondería a la Comisión de Servicio Público.

Para una mejor comprensión de la cuestión envuelta transcribimos a continuación ambos preceptos:

"Artículo 20.—*Determinación de Daños Causados.*—

(a) Cuando la Comisión, luego de celebrada audiencia determinare que cualesquiera tarifa cobrada, acto realizado u omitido, o práctica puesta en vigor ha infringido cualquier orden, fuere injusta o irrazonable, estableciere diferencias o preferencias injustificadas o indebidas o que la tarifa cobrada excede la radicada, publicada y vigente a la fecha en que se prestó el servicio, podrá ordenar a la compañía de servicio público o porteador por contrato que pague al perjudicado, dentro del tiempo razonable que se especifique, el importe de los daños y perjuicios sufridos como resultado de la tarifa, acto, omisión o práctica injusta, irrazonable o ilegal. La orden que a ese efecto se expida contendrá conclusiones de hechos y la cuantía que ha de pagarse.

(b) Si la compañía de servicio público o porteador por contrato no cumpliere la antedicha orden para el pago de dinero dentro del tiempo que se fijare, la persona a cuyo favor se ordena se haga dicho pago, podrá radicar una acción judicial por su importe, y la misma se tramitará, cualquiera que fuere su cuantía, de acuerdo con la Regla 60 de Procedimiento Civil vigente. La orden dictada por la Comisión constituirá prueba prima facie de los hechos expuestos en ella y de que la cantidad adjudicada se debe justamente al demandante en dicho pleito.

La compañía de servicio público o porteador por contrato demandado no podrá levantar la defensa de que el servicio, como cuestión de hecho, fue prestado al demandante al precio contenido en su tarifa vigente al tiempo que se hizo y recibió el pago.

(c) No se otorgará indemnización alguna por la Comisión, a menos que la querella o petición se hubiere presentado ante ella dentro de los dos años contados desde la fecha en que surgió la causa de acción. El pleito para obligar al cumplimiento de una orden para que se efectúe dicho pago deberá entablarse dentro de un año desde la fecha de la orden.

(d) No se instituirá acción alguna por razón de los daños y perjuicios a que se refiere este artículo, hasta que la Comisión hubiere determinado que la tarifa, acto, u omisión de que se trate era injusto, irrazonable, o que establecía diferencias injustas o preferencias indebidas o irrazonables, o en exceso de los precios contenidos en dichas tarifas, y tal acción se limitará a reclamar los daños y perjuicios que la Comisión hubiere adjudicado y ordenado.

(e) Como parte de los procedimientos la Comisión podrá ordenar a la querellada, que se abstenga de continuar cobrando la tarifa o realizando u omitiendo el acto o la práctica objeto de la querella y a tal efecto podrá exigir del querellante que haga en la Secretaría un depósito razonable en armonía con la cuantía que justifique los términos de la querella sujeta a la determinación posterior que luego haga en el caso la Comisión.

Artículo 66.—*Responsabilidad por Daños y Perjuicios Causados por Infracciones.*—Cualquier compañía de servicio público o porteador por contrato que hiciere o fuere causa de que se cometiere cualquier acto, asunto o cosa prohibida o declarada ilegal por esta ley, o se negare a hacer, dejare de hacer u omitiere hacer cualquier acto, asunto o cosa a que esté obligado o que se requiere hacer por esta ley, será responsable a la persona perjudicada, de la cantidad total de daños o perjuicios sufridos por ésta por sus actos u omisiones. La responsabilidad de la compañía de servicio público o porteador por contrato por negligencia, según se establece por ley, no se considerará ni se interpretará en el sentido de quedar alterada o derogada por ninguna de las disposiciones de esta ley."

Con variaciones insignificantes de estilo, estas disposiciones son una reproducción de los Arts. 28 y 100 de la anterior Ley de Servicio Público, Núm. 70 de 6 de diciembre de 1917 (Leyes, pág. 433), adoptada para implementar el Art. 38 de la Carta Orgánica Jones. *Santiago* v. *Comisión de Servicio Público*, 37 D.P.R. 500, 507–512 (1927).[1] A su vez, los Arts. 28 y 100 de la ley de 1917 son una traducción literal de la Sec. 5 del Art. V y la Sec. 40 del Art. VI de la Ley Núm. 854 de 26 de julio de 1913 del Estado de Pensilvania (Leyes, pág. 1374), que sirvió de modelo para la nuestra. *Alers* v. *Tribunal Superior*, 83 D.P.R. 701, 705 (1961).

Interpretando disposiciones similares,[2] la Corte Suprema de Pensilvania, se expresó en *Borough of Lansdale* v. *Philadelphia Electric Co.*, 170 A.2d 565 (1961), en forma que no deja lugar a dudas:

"Aunque conservamos el derecho a revisar judicialmente las actuaciones de la PUC, ningún principio ha quedado más firmemente establecido en el derecho de Pensilvania que los tribunales no adjudicarán originalmente asuntos que están dentro de la jurisdicción de la PUC. La jurisdicción inicial en asuntos que envuelvan relaciones entre las empresas de servicio público y el público usuario corresponde a la PUC—no a los tribunales. Así ha sido resuelto en casos que envolvían tarifas, *prestación de servicios, reglamentación de servicio,* extensión y

---

[1] Antes de 1917, la reglamentación de las compañías de servicio público correspondía al Consejo Ejecutivo, según la Ley de 12 de marzo de 1908 (Leyes, pág. 61). Salvo la Sec. 10, ninguna otra disposición nos ofrece luz sobre el asunto que consideramos. Dicha sección proveía un procedimiento sencillo para la presentación de "quejas" por "cualquier acto realizado u omitido por una corporación de servicio público, infringiendo, o que se presuma infrinja, ya un precepto legal, ya los términos y condiciones de su franquicia o concesión, o ya cualquier orden o reglamento dictado por el Consejo Ejecutivo", y autorizaba al Consejo a expedir la orden u órdenes que a su juicio las circunstancias exigieran.

[2] 66 P.S. §§ 1153 y 1500 (Purdon's, *Penna. Statutes Annotated*), que sustituyeron las Secs. 5 y 40 de los Arts. V y VI de la Ley de Servicio Público de 1913.

ampliación, peligros a la seguridad pública por la utilización de los servicios públicos, *instalación de facilidades,* localización de facilidades . . . ." (Énfasis nuestro.)

En el caso más reciente que hemos podido encontrar, *Einhorn* v. *Philadelphia Electric Company,* 190 A.2d 569 (Pa. 1963), tratábase de un procedimiento iniciado para la toma de deposiciones a los fines de la iniciación de una acción para que revirtieran al Estado ciertos fondos recibidos por una empresa de servicio público para la instalación de unas líneas eléctricas subterráneas. La compañía invocó la cuestión jurisdiccional. Al resolver el planteamiento en forma favorable a la empresa, díjose, a la pág. 571:

"Tanto la Ley de Servicio Público como las decisiones de este Tribunal, con claridad meridiana, requieren que las cuestiones que se refieran a cargos excesivos se ventilen en primera instancia *exclusivamente* por la Comisión. En ausencia de tal determinación no hay bienes susceptibles de revertir al estado . . . ." (Énfasis nuestro.)

Véanse además, *Borough of Midland* v. *Steubenville, E.L. & B.V.T. Co.,* 150 A. 300, 302–303 (Pa. 1930), y *York Water Co.* v. *City of York,* 95 A. 396 (Pa. 1915).

 Irrespectivamente de que esta interpretación del estatuto de donde se tomó el nuestro tiene fuerza persuasiva, una lectura de ambas disposiciones sostiene la conclusión de que el Art. 66 contiene más bien una reserva para los casos no cubiertos por el Art. 20. Es significativo que este último forme parte del Capítulo III de la ley que trata de los "Poderes y Deberes de la Comisión", mientras que el primero figura en el Capítulo V que comprende las disposiciones sobre "Práctica y Procedimiento ante la Comisión; Revisión Judicial." En su aspecto general, puede decirse que el Art. 66 es una reafirmación de la responsabilidad que por negligencia *extracontractual* se impone a todas las personas,

incluyendo las empresas de servicio público, en virtud de las disposiciones generales del Código Civil y por otras responsabilidades impuestas por la ley que no tiene *relación directa* con el servicio público que prestan las empresas; y que el Art. 20, concebido en términos tan amplios, cubre las relaciones entre la empresa de servicio público y el consumidor, así como las reclamaciones que de ellas dimanan. (³) Así, por

---

(³) En 10 de septiembre de 1965 la Comisión de Servicio Público (Informe Anual, 1965–66, pág. 15) adoptó un reglamento sobre escala de tarifas y disposiciones generales aplicables a los servicios suministrados por la Puerto Rico Telephone. La disposición general Núm. 7 regula ampliamente la suspensión y reconexión del servicio. Dice así:

"A. *Falta de Pago de Facturas*

"1. Toda Clase, Tipo y Grado de Servicio Local y de Larga Distancia

"En caso de falta de pago por un suscriptor de cualquier deuda vencida por servicio local, de larga distancia o cualquier otro servicio suministrado por la Compañía, ésta podrá:

"a. Suspender parcial o totalmente el servicio a dicho suscriptor después de notificarle por escrito de su atraso en el pago y la intención de suspender dicho servicio o servicios. El suscriptor no tendrá derecho a ajuste alguno en los cargos de la renta por el período que cubra dicha suspensión.

"b. Desconectar cualquier o todo servicio y retirar cualesquiera de los equipos de la Compañía de cualesquiera de los locales del suscriptor después de transcurridos diez días de haberse suspendido el servicio por falta de pago.

"2. Servicio Anterior

"La Compañía se reserva el derecho de rehusar servicio a cualquier persona que tenga deuda pendiente con la Compañía por servicios prestados previamente por la Compañía a dicha persona. En el caso de estar la Compañía suministrando servicio a cualquier persona y posteriormente se descubra que dicha persona está en deuda con la Compañía por servicios suministrados previamente, la Compañía tendrá el derecho de retirar por falta de pago el servicio suministrado a menos que sea pagada dentro de los diez días de la fecha de presentación de la factura correspondiente por la Compañía. El hecho de que la Compañía suministre servicio a cualquier persona deudora por servicios previos no se considerará como renuncia por la Compañía a derecho alguno.

"B. *Facilidades, Utensilios o Aparatos Inseguros o Prohibidos*

"...

"C. *Fraude*

"...

ejemplo, una reclamación por daños ocasionados por un vehículo de la compañía telefónica, se ventila ante los tribunales conforme al Art. 66; una reclamación de un usuario por los

"D. *Incumplimiento*

"La Compañía tendrá el derecho de suspender el servicio telefónico a un suscriptor por incumplimiento de cualesquiera de estos reglamentos, si después de notificación escrita de por lo menos diez días, no ha accedido al cumplimiento requerido.

"E. *Solicitud del Suscriptor de Suspensión o Desconexión Temporera*
". . . . . . . .

"F. *Reconexión—Cargo por Reconexión*
". . . . . . .

"G. *Lenguaje Abusivo por Suscriptores*

"La Compañía podrá suspender el servicio telefónico de cualquier suscriptor que use lenguaje abusivo o profano, o simule ser otra persona con intención de defraudar, a través de cualquier línea, conectada al sistema de la Compañía, después de haber sido advertido del hecho.

"H. *Desconexión Temporera o Permanente del Servicio*

"Cuando la Compañía tiene el derecho de desconectar temporera o permanentemente el servicio como se establece en estos reglamentos, puede hacerlo a su opción.

"I. *Uso Ilegal*

"La Compañía desconectará el servicio por uso ilegal.

"J. *Abandono del Servicio*

"La Compañía tendrá el derecho a suspender el servicio y retirar el equipo cuando el suscriptor abandone el local en el cual esté instalado el equipo.

"K. *Accesorios Foráneos*

"El abonado no podrá ni permitirá a otros adherir, instalar o conectar directamente o por inducción a alambres o equipos propiedad de la Compañía cualquier instrumento, aparato o mecanismo de clase alguna que no sea suministrado e instalado por la Compañía. La Compañía tendrá el derecho de suspender el servicio de un suscriptor por incumplimiento de este reglamento si, después de notificación escrita de por lo menos diez días, no ha accedido al cumplimiento requerido."

Por el interés que pueda tener copiamos el apartado VI de la disposición general Núm. 5 que establece el procedimiento en relación con las cuentas objetadas.

"VI. *Procedimiento en relación con cuentas objetadas*

"En el caso de cuentas objetadas, para evitar que se descontinúe el servicio por falta de pago, el abonado deberá dentro de diez días después de haberle sido rendida la factura, pagar la cantidad no objetada y notificar a la Compañía cuáles son los cargos que objeta y la razón para ello. Dentro de treinta días de recibida la notificación la Compañía deberá investigar los hechos y notificar al abonado los resultados de la

daños causados por la interrupción del servicio, ante la Comisión de Servicio Público, conforme al Art. 20. [4]

Si ello fuere necesario consideraciones prácticas nos conducirían a preferir la conclusión a que hemos llegado reconociendo que estas reclamaciones relacionadas con el servicio que prestan las compañías de servicio público deben ventilarse en primera instancia ante el organismo que las reglamenta. Otra solución conllevaría congestionar aún más nuestros tribunales de instancia. [5] Naturalmente si la situación

investigación. Si la Compañía y el abonado no pueden resolver la controversia entre ellos el abonado deberá, dentro de quince días a partir de la notificación final por la Compañía, pagar la cantidad bajo protesta o depositar dicha cantidad simultáneamente con la radicación de su querella en la Comisión de Servicio Público, hasta que la Comisión resuelva el caso. De lo contrario, la Compañía podrá suspender el servicio por falta de pago de dicha cantidad.

"Sin embargo, la Comisión en cualquier caso que a su juicio lo justifique, por la naturaleza de las alegaciones contenidas en la querella, podrá relevar al querellante del depósito en esta agencia de parte o la totalidad de la suma objeto de protesta y la Compañía no suspenderá el servicio telefónico al usuario hasta que oportunamente se resuelva el caso en sus méritos."

[4] La Asamblea Legislativa incorporó disposiciones casi idénticas a los Arts. 20 y 66 al aprobar la "Ley Reglamentando la Industria Azucarera de Puerto Rico", Núm. 221 de 12 de mayo de 1942 (Leyes, pág. 1177), véanse los Arts. 27 y 61, señalando así que hay un ámbito particular para cada una de ellas. Dudamos mucho que la intención legislativa hubiese sido entonces que las múltiples controversias que surgían en la industria azucarera se ventilaran ante los tribunales de justicia.

[5] De los informes anuales de la Comisión de Servicio Público se desprende que el mayor número de quejas que se reciben por dicho organismo se refieren al servicio telefónico.

| Año | Total de Quejas | Quejas contra Cía. telefónica |
|---|---|---|
| 1966–67 | 1,053 | 603 |
| 1965–66 | 1,090 | 781 |
| 1964–65 | 1,308 | 990 |

En ambos informes se indica que la mayor parte de las quejas se basan en la suspensión del servicio por parte de la empresa, y que le siguen en orden las relacionadas con llamadas adicionales que el usuario objeta.

Para dar una idea de los distintos motivos de queja de los usuarios acudimos al desglose que para fines .estadísticos prepara la Comisión. En

de ley presente, según queda aclarada por nuestra decisión de hoy, no fuese suficiente para proteger a los usuarios que sufran daños debido al incumplimiento o temeridad de la compañía del teléfono, es de esperarse que la Asamblea Legislativa considerará de nuevo el asunto y hará las enmiendas que estima necesarias.

*Por lo anteriormente expuesto resolvemos que las querellas de los usuarios relacionadas con el servicio telefónico deben ventilarse originalmente ante la Comisión de Servicio Público.*

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Santana Becerra disintió.

—O—

Opinión Disidente del Juez Asociado Señor Santana Becerra

San Juan, Puerto Rico, 14 de mayo de 1968

1. En el recurso R-65-223 el Dr. Rovira Palés interpuso demanda en la Sala de San Juan del Tribunal Superior reclamando a la Compañía del Teléfono daños por incumplimiento de contrato de servicio telefónico. Alegó que sin motivo ni razón, por culpa, negligencia y mala fe de la compañía, le privó de dicho servicio y le tenía así privado.

La Sala de San Juan (Hon. Frank Paganacci, Juez), desestimó la acción por falta de jurisdicción, bajo el criterio de que el asunto correspondía a la Comisión de Servicio Público según el Art. 20 de la Ley de su creación, Núm. 109 de 28 de junio de 1962.

2. En el recurso R-66-24 el demandante Cartagena interpuso acción de daños contra la Compañía en la Sala de San Juan del Tribunal Superior, y alegó que la demandada le

adición a los ya indicados, se relacionan con traslados de teléfonos, deficiencias en el servicio, solicitudes no atendidas, cargos indebidos, cambios de servicio, cambios de tarifa y cargos por el servicio de larga distancia.

privó del servicio telefónico sin motivo o causa para ello, y se negaba a reinstalarlo, incumpliendo así su contrato de servicio.

La Sala de San Juan (Hon. Fausto Ramos Quirós, Juez), desestimó la demanda por falta de jurisdicción, en funda-mentos similares.

3. En el recurso R-66-60, Emmanuelli interpuso demanda en la Sala de Ponce del Tribunal Superior en reclamación de daños contra la Compañía por interrupción del servicio sin causa o justificación, por alegada falta de pago, no siendo esto cierto.

La Sala de Ponce (Hon. Armindo Cadilla, Juez), desestimó la contención de falta de jurisdicción, y dictó sentencia sosteniendo la demanda.

4. En el recurso R-67-5 la demandante González Rivera interpuso demanda por suspensión del servicio y privación de su teléfono instalado.

La Sala de San Juan del Tribunal Superior (Hon. Manuel A. Moreda, Juez), sostuvo su jurisdicción y declaró con lugar la demanda sobre los hechos probados.

Se revisan todas esas decisiones. En el recurso R-65-223 admitimos como *amicus curiae* al usuario Sr. Enrique Clavell, y también admitimos en igual capacidad a la firma de letrados Baragaño, Trías, Saldaña, Harris y Francis.

Analizada la cuestión litigiosa, convengo con los Magistrados Cadilla y Moreda, con los abogados de los usuarios, así como con el *amicus curiae* Baragaño, Trías, Saldaña, Harris y Francis, en que el Tribunal Superior tenía jurisdicción y competencia para fallar estos casos, a la luz de los hechos envueltos.

El Art. 20 de la Ley de Servicio Público de Puerto Rico, Núm. 109 de 28 de junio de 1962, dispone que cuando la Comisión, luego de celebrada una audiencia, determinare que cualquier tarifa cobrada, acto realizado u omitido, o práctica puesta en vigor *ha infringido cualquier orden*, fuere

injusta o irrazonable (la práctica) estableciere diferencias o preferencias injustificadas o indebidas o que la tarifa cobrada excede la radicada, publicada y vigente a la fecha en que se prestó el servicio, *podrá ordenar* a la compañía . . . que pague el importe de los daños y perjuicios sufridos como resultado de la tarifa, acto, omisión o práctica injusta, irrazonable o ilegal.

Entre los deberes que la Ley impone directamente a la Compañía de servicio público está el de prestar sus servicios al serles razonablemente solicitados, y el mantener dichos servicios. Art. 38.

Ya para el final de la Ley, después de dictaminar el Legislador extensamente sobre las prácticas y procedimientos ante la Comisión y sobre la revisión judicial de tales prácticas, Arts. 40–61, dispuso en el Art. 66 y con conocimiento de lo antes legislado, que cualquier compañía de servicio público que hiciere o fuere causa de que se cometiere cualquier *acto, asunto o cosa prohibida o declarada ilegal por la Ley,* o que se negare a hacer, dejare de hacer, u omitiera hacer cualquier acto, asunto o cosa *a que estuviera obligada, o que la Ley le requiriere,* será responsable a la persona perjudicada en la cantidad de daños sufridos por ésta por sus actos u omisiones. Y se dispone que la responsabilidad de la compañía de servicio público *por negligencia,* según se establece por ley, no se considerará *ni se interpretará* en el sentido de *quedar alterada* o derogada por *ninguna* de las disposiciones de dicha Ley.

Ante los hechos envueltos en estos casos, fundamentalmente hay en el fondo una relación contractual de prestación de servicios. La negligencia no está excluida de la relación y del cumplimiento contractual. Las obligaciones nacen de la ley, de los contratos y cuasi contratos, y de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o *negligencia,* dice el Código Civil, ed. 1930, Art. 1042.

Reza el Art. 1054 que quedan sujetos a indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en dolo, *negligencia* o morosidad.

Es claro que hubo negligencia de la Compañía, en el descargo de su obligación contractual—porque de lo contrario habría que concluir dolo o mala fe—en el acto de suspender un servicio por alegada falta de pago, habiéndose probado lo contrario; y en la terminación de un servicio e incautación de los aparatos a base de un traslado alegadamente solicitado por un usuario, que no lo había solicitado.

En ausencia de una expresión claramente excluyente del Legislador no hallo base en la Ley para privar a estos usuarios de la jurisdicción ordinaria de los tribunales ante los hechos envueltos. Sobre todo, si se considera el lenguaje meramente *permisible* que el Legislador usó en el Art. 20 en cuanto a la intervención de la Comisión.

Veo, además, otras consideraciones de necesidad pública. Los procedimientos administrativos de la Ley son largos y tortuosos. No son sencillos. Si la Comisión no acepta tramitar la querella de un usuario, tendría él que acudir al Tribunal Superior y eventualmente a este Tribunal, por un estrecho cause limitado en cuanto a los hechos y por un sistema lleno de tecnicismos. Si la admite, podría acudir la compañía a tales procesos de revisión de igual manera. Posiblemente, todo ello antes de una determinación administrativa en los méritos, de daños. Aun después de tal determinación en los méritos, habría que acudir a un tribunal para demandar el cobro.

La experiencia demuestra que el usuario puede quedar a expensas de una actitud más alerta y vigilante del organismo administrativo o menos alerta y vigilante, dependiendo de las razones que fueren, incluyendo los medios físicos y económicos que al organismo administrativo se le proveyeren para llenar este cometido.

Salvo un criterio superior legislativo que expresamente la negara, me parece que no debe privarse a estos usuarios, ante los hechos envueltos, de la función judicial. Ocurre aquí lo que la Ley dispuso que no ocurriera, que se *altera* por interpretación la responsabilidad que el Art. 66 impuso a la Compañía sobre negligencia.

Confirmaría las sentencias en los casos R-66-60 y R-67-5, y revocaría la de los casos R-65-223 y R-66-24.