VIAJES GALLARDO, querellada y recurrida, *v.* HOMERO CLAVELL, EMMA BERDECÍA y la COMISIÓN DE SERVICIO PÚBLICO DE PUERTO RICO, querellantes y recurrentes.

*Número:* CE-89-154          *Resuelto:* 30 de junio de 1992

*Dolores Sanjurjo López*, abogada de los querellantes y recurrentes; *Tadeo Negrón Medero*, abogado de la querellada recurrida; *Jorge E. Pérez Díaz, Procurador General,* y *Eunice Amaro Garay, Procuradora General Auxiliar*, abogados de El Pueblo.

El JUEZ ASOCIADO SEÑOR FUSTER BERLINGERI emitió la opinión del Tribunal.

El 3 de abril de 1985 Homero Clavell y Emma Berdecía presentaron una querella ante la Comisión de Servicio Público de Puerto Rico (en adelante Comisión). Según las determinaciones de hecho de la Comisión, los querellantes, en unión a tres familiares, compraron a Viajes Gallardo una excursión para viajar a Orlando, Florida. La excursión incluía alojamiento en un apartamento completamente equipado, incluyendo: Cable T.V., acondicionador de aire, cocina equipada, ropa de cama y toallas. Al llegar al hospedaje el 17 de julio de 1984 por la noche, los querellantes encontraron varias deficiencias en el lugar. Entre ellas el acondicionador de aire no funcionaba; el lavamanos del baño estaba tapado; tres de las hornillas de la estufa no funcionaban; no había teléfono y había una ventana que no podía ser cerrada si no era con un pedazo de madera. Este detalle de la ventana no se le advirtió a los querellantes.

En la noche del 17 de julio, mientras los querellantes dormían, personas extrañas penetraron en el apartamento y hurtaron la cartera y las pertenencias personales de la señora Berdecía,[1] causándoles consternación a los querellantes por el riesgo que implicó para sus vidas. Éstos informaron lo sucedido a los administradores del motel y solicitaron de ellos usar su teléfono para hacer algunas llamadas, para fines tales como cancelar tarjetas de crédito, cancelar cheques de viajero y otros. Los administradores del motel no se lo permitieron, por lo que los querellantes tuvieron que mudarse a otro lugar.[2]

En la querella, Clavell y Berdecía alegaron que todos los contratiempos aludidos menoscabaron y encarecieron su disfrute del viaje y de las vacaciones, por lo cual solicitaron

---

[1] Entre las pertenencias la señora Berdecía perdió: (a) $400; (b) prendas valoradas en $150; (c) lentes de contacto valorados en $250; (d) cosméticos valorados en $70, y (e) $10 en monedas.

[2] Surge de las determinaciones de hecho de la Comisión de Servicio Público de Puerto Rico que la querellada devolvió a los querellantes la suma de $240. Esto, en concepto de las noches que no se quedaron en el motel original.

la devolución de los gastos en que incurrieron y el pago de otros daños sufridos por motivo de la negligencia de la querellada.

La agencia de viajes contestó la querella y alegó como defensa principal la falta de jurisdicción de la Comisión para ver el caso. La Comisión citó para una vista el 13 de noviembre de 1985, la cual se celebró sin el querellado que no compareció a pesar de ser debidamente citado. El 17 de junio de 1986 la Comisión declaró con lugar la querella ordenando a la agencia de viajes a pagar $2,000 a los querellantes en concepto de daños. Impuso, además, una multa a la querellada por operar sin permiso válido y desestimó el planteamiento de la querellada sobre falta de jurisdicción.

El 8 de agosto de 1986 la parte querellada presentó una solicitud de relevo de la resolución dictada el 17 de junio de 1986. Alegó que no se le concedió oportunidad de defenderse, pues había solicitado la suspensión de la vista(³) y levantó nuevamente la cuestión jurisdiccional.

La Comisión acogió en parte la solicitud de la parte querellada y citó a vista el 28 de julio de 1987 a los únicos efectos de discutir la defensa de falta de jurisdicción. Celebrada la vista, la Comisión se reafirmó en su dictamen original y emitió la resolución correspondiente el 14 de diciembre de 1987, que fue notificada el 8 de enero de 1988.

Inconforme con la decisión administrativa, la parte querellada acudió en revisión ante el Tribunal Superior. Luego de los trámites correspondientes, el tribunal dictó sentencia resolviendo que la Comisión no podía asumir jurisdicción sobre la controversia relativa a la excursión por no

---

(³) Existen serias dudas sobre si realmente se presentó la moción de suspensión. Consta entre los documentos del caso una certificación del Secretario de la Comisión de Servicio Público de Puerto Rico que señala que dicha moción de suspensión, de 9 de noviembre de 1985, no aparece registrada, a pesar de que hizo una búsqueda minuciosa. Señaló que no había ningún documento presentado durante esos días, ya que éstos fueron sábado, domingo y lunes feriado. La búsqueda en los días posteriores, 12 y 13 de noviembre de 1985, resultó infructuosa.

estar claramente autorizada en la ley para ello. Dejó sin efecto la parte de la resolución que ordenó el pago de $2,000 a los querellantes. El tribunal de instancia expresamente dictaminó que su sentencia no afectaba en forma alguna las partes de la resolución de la Comisión relativas al hecho de que la agencia estaba haciendo negocios sin permiso de la Comisión para ello. El tribunal confirmó, de esta forma, la multa impuesta por operar sin autorización ya que la licencia estaba vencida. La parte querellante tramitó una reconsideración el 24 de octubre de 1988 y el tribunal, el 7 de febrero de 1989, se reafirmó en su sentencia original. De esta última sentencia se recurre a este Tribunal.

I

Tenemos que determinar inicialmente si la Comisión tenía jurisdicción para resolver disputas referentes a los servicios prestados por una agencia de viajes consistentes en gestionar alojamiento para sus clientes durante un viaje fuera de Puerto Rico.

El Art. 14 de la Ley de Servicio Público de Puerto Rico, 27 L.P.R.A. sec. 1101, señala los poderes generales que posee la Comisión. Uno de ellos es la facultad de reglamentar y fiscalizar las agencias de pasajes, definidas entonces como toda persona dedicada a la venta u ofrecimiento en venta de pasajes en Puerto Rico para el transporte aéreo, terrestre o acuático de personas para lugares dentro y fuera de Puerto Rico.[4] En 1990 se enmendó el inciso (w) del Art. 2 de la Ley de Servicio Público de Puerto Rico, 27 L.P.R.A. sec. 1002(w), para añadir a la definición original de "agencia de pasajes" a toda persona que

---

[4] Art. 2 (w) de la Ley de Servicio Público de Puerto Rico, 27 L.P.R.A. sec. 1002 (w).

realizara reservaciones de alojamiento, entretenimiento o transportación terrestre o confección y venta de viajes integrales dentro o fuera de Puerto Rico.(5)

Esta enmienda se aprobó después de terminado el proceso de marras ante la agencia administrativa. Por ello es menester determinar si la Comisión tenía jurisdicción para resolver disputas sobre servicios de alojamiento al momento en que consideró la querella. Es decir, debemos resolver si la enmienda fue meramente para *aclarar* los poderes de la Comisión o si, en cambio, fue constitutiva del poder en cuestión.

La ley que creó la Comisión le confirió a esta agencia la facultad de aprobar reglas necesarias y propias para el ejercicio de sus facultades y deberes. Art. 36 de la Ley de Servicio Público de Puerto Rico, 27 L.P.R.A. sec. 1123. Al amparo de estos poderes la Comisión aprobó *el Reglamento General para las Empresas de Agencias de Pasajes de Puerto Rico*, con el propósito de "establecer reglas y normas a todas las personas que se dediquen a la venta, ofrecimiento en venta y/o reserva de boletos de viajes u otras funciones similares para el transporte de personas por vía aérea, terrestre y/o acuática para lugares dentro y fuera de Puerto Rico".(6) El reglamento respondía, en parte, a la necesidad de fiscalización causada por el desarrollo económico y los avances tecnológicos en Puerto Rico que expandieron el número de servicios que las agencias de viajes podían prestar ordinariamente. La venta de pasajes había dejado de ser el único negocio típico de estas agencias y era necesario reglamentar estos nuevos servicios que se estaban prestando cotidianamente al público. El Art. 7 del Reglamento General para las Empresas de Agencias de Pasajes de Puerto Rico, Comisión de Servicio Público, 5 de

---

(5) Íd.

(6) Art. 3 del Reglamento General para las Empresas de Agencias de Pasajes de Puerto Rico, Comisión de Servicio Público, 5 de febrero de 1974, pág. 1.

febrero de 1974, págs. 3–4, especificaba algunas de estas actividades:

> Las Agencias de Pasajes estarán autorizadas a desempeñar las siguientes funciones y actividades:
>
> a. El ofrecimiento en venta, la venta y/o la reserva de boletos de viaje para el transporte de pasajeros por la vía aérea, terrestre o acuática a lugares en y fuera de Puerto Rico, actuando por sí o como agentes de otras agencias de viajes, ya sea separadamente o en combinación con los servicios que se enumeran en los incisos b, c, d, e y f de este Artículo. *Entendiéndose, que al actuar como agentes de otras agencias de viajes en las funciones arriba mencionadas responderán como principales y/u originadores del servicio y estarán sujetas a lo dispuesto en la Ley de Servicio Público de Puerto Rico.*
>
> b. La prestación de servicios adicionales, tales como la mediación en reservaciones de diferentes tipos, como por ejemplo, *alojamiento*, transportación y entretenimiento, o arreglos relacionados con el propósito del viaje. (Énfasis suplido.)

■ Al enumerar a través del reglamento los servicios que podían realizar las agencias de pasajes, la Comisión cumplió con el mandato legislativo de delimitar específicamente las actividades concretas que quedarían sujetas a reglamentación a tenor con el amplio poder conferido a la Comisión. Una vez el legislador concedió autoridad a la Comisión para reglamentar una empresa que presta un servicio de gran interés a la comunidad, le delegó no sólo poder para reglamentar las funciones tradicionales que esa empresa realiza, sino también para fiscalizar aquellas otras que surgen de la actividad principal. Como bien ha señalado este Tribunal:

> … [N]o es indispensable que la ley fije normas detalladas y minuciosas. Dadas las condiciones sociales y económicas modernas, (1) la Legislatura no puede considerar los detalles de los programas de gobierno: su función esencial es la de establecer pautas generales y si tratase de intervenir en los detalles no podría desempeñarla a cabalidad; (2) con frecuencia es preciso desarrollar programas que exigen la supervisión constante, el conocimiento técnico y la experiencia especializada de organismos administrativos; y (3) siempre resulta esencial para la rea-

lización efectiva de esos programas conceder un amplio margen de discreción a dichos organismos. Por eso, la delegación de poderes puede hacerse constitucionalmente a base de normas amplias y generales. *López v. Junta Planificación*, 80 D.P.R. 646, 661 (1958).

Igualmente señalamos en *Rivera, v. Lugo, Alcaide*, 53 D.P.R. 684, 698, (1938) que:

La Ley de Servicio Público en su totalidad revela una política legislativa definida de supervisión, reglamentación y control sobre las compañías de servicio público y sobre los porteadores públicos. Reglamenta estas compañías y porteadores hasta cierto punto, establece determinadas normas, criterios y reglas que servirán de guía a la Comisión de Servicio Público y por y mediante sus propias órdenes, reglas y reglamentos confiere además a la Comisión la facultad de reglamentar, supervisar y controlar tales compañías y porteadores.

A la luz de estas normas, en Derecho es claro que el reglamento aprobado por la Comisión estaba dentro de los amplios poderes que el legislador le confirió para reglamentar los servicios de las agencias de viajes.

No estamos aquí ante una situación en que una empresa realiza una actividad que claramente no estaba sujeta a reglamentación y fiscalización por la Comisión, como ocurrió en el caso de *P.R. Lighterage Co. v. Caribe Tugboat Corp.*, 111 D.P.R. 686 (1981), y que el tribunal de instancia erróneamente consideró aplicable. *P.R. Lighterage Co. v. Caribe Tugboat Corp.*, supra, que no revocamos de modo alguno, es claramente distinguible del caso de autos. En *P.R. Lighterage Co. v. Caribe Tugboat Corp.*, supra, la Comisión fijó tarifas para servicios de remolque. Sin embargo, sucedía que las empresas dedicadas al servicio de remolque no estaban incluidas bajo el acápite de compañía de servicio público ni bajo la definición de porteador público. Aunque la Comisión tenía poder para fijar tarifas, era claro que las compañías de remolque no estaban sujetas a su jurisdicción.

■ Fue en ese contexto que este Tribunal señaló que la Comisión y los tribunales no pueden añadir tipos de empresas a los que la Asamblea Legislativa define como de servicio público ni asumir jurisdicción sobre actividades que no estén autorizadas por ley. Dicho señalamiento no se extiende a casos como el de marras, que es enteramente distinto al de *P.R. Lighterage Co. v. Caribe Tugboat Corp.*, supra, en el que la Comisión tiene autoridad clara para reglamentar la empresa en cuestión. En el caso que nos ocupa, la actividad que ha de ser regulada (servicio de reserva de alojamiento) no sólo está íntimamente relacionada con la actividad principal de la agencia de viajes, sino que incide sobre dicha actividad. Las agencias de pasajes, con el pretexto de ofrecer un "viaje integral" (*package tour*), pueden disfrazar un alza en la tarifa de los boletos de viaje y sacrificar la calidad del lugar de alojamiento para obtener una ganancia. Esto, definitivamente, incide sobre la actividad de venta de boletos, ya que puede tener un impacto negativo en el consumidor en cuanto al precio del pasaje y en cuanto a la calidad de servicio en el alojamiento. Limitar la jurisdicción de la Comisión a regular sólo la venta pasajes, dado el amplio desarrollo que ha ocurrido en los negocios y servicios de esas agencias, que incluyen otras actividades de tanta o más importancia que la venta en sí del pasaje, es dejar a la Comisión prácticamente inoperante en lo que a reglamentación de dichas agencias se refiere.[7]

■ Debemos reiterar aquí que la creación de la Comisión fue el resultado de la imperiosa necesidad social de reglamentar y fiscalizar de cerca las operaciones de las compañías de servicio público. La decisión del poder legis-

---

[7] El Presidente de la Comisión de Servicio Público de Puerto Rico le indicó a la Legislatura en un memorando que la actividad de reserva de alojamiento es una de las que mayormente genera querellas y quejas. Véase Memorial sobre el P. del S. 749 de 23 abril de 1990, pág. 3.

lativo fue en el sentido de que estos negocios podían incurrir en excesos muy perjudiciales al interés público, por lo que se hacía necesario institucionalizar algún medio para proteger a la comunidad en general.[8]

El poder legislativo, claro está, no podía entender directamente en todos los aspectos del problema que había identificado. La creciente complejidad de la vida moderna y la multiplicación de los eventos y servicios que se fiscalizan hacían necesaria la delegación de poderes por la Asamblea Legislativa a un organismo especializado que pudiese encararlo en todos sus frentes. Esta delegación de autoridad bajo criterios amplios no se cuestiona hoy día. Si la reglamentación promulgada por la agencia para implantar la encomienda que se le ha hecho cae dentro de los amplios poderes delegados, y no es arbitraria o caprichosa, tiene el visto bueno judicial. Véanse: *Rivera v. Lugo*, supra; *Hernández Denton v. Quiñones Desdier*, 102 D.P.R. 218 (1974); *M. & B.S., Inc. v. Depto. de Agricultura*, 118 D.P.R. 319 (1987); *López Vives v. Policía de P.R.*, 118 D.P.R. 219 (1987).

Nuestra conclusión de que la Comisión tenía autoridad legítima para reglamentar los servicios de alojamiento prestados por las agencias de viajes no depende únicamente de los bien conocidos y fundamentales principios y normas de derecho administrativo que hemos citado. Se apoya, además, en el historial de las enmiendas a la Ley de Servicio Público de Puerto Rico legisladas en 1990. Al aprobar la Ley Núm. 50 de 22 de agosto de 1990, ampliando los poderes de la Comisión, el legislador tuvo dos propósitos distintos aunque íntimamente relacionados entre sí. Como tantas veces ocurre en estas situaciones, el legislador quiso *adicionar* nuevas facultades a la Comisión, a la vez que *aclaraba* otras facultades que la Comi-

---

[8] 15 Diario de Sesiones de la Asamblea Legislativa (Ordinaria), T. 2, pág. 540 (1962).

sión ya tenía pero que requerían una definición más expresa a tenor con las nuevas situaciones creadas por el desarrollo económico y los avances tecnológicos. Uno de los asuntos que el legislador quiso aclarar fue precisamente el relacionado con las facultades existentes de la Comisión respecto a los servicios de alojamiento prestados por las agencias de viajes. En el Informe Conjunto de las Comisiones de lo Jurídico y de Asuntos del Consumidor del Senado sobre la Ley Núm. 50, *supra,* se expresa y diáfanamente se señaló lo siguiente:

> Se introduce la enmienda al inciso (w) del Art. 2 de la ley para *clarificar* que la jurisdicción de la Comisión de Servicio Público sobre agencias de pasajes incluye otros servicios íntimamente relacionados con la actividad de venta de pasajes, *especialmente viajes integrales o excursiones.* Estos servicios incluyen *alojamiento*, transportación terrestre, comidas, entretenimiento y visitas a lugares de interés. (Énfasis suplido.)([9])

De esta forma el legislador eliminaba cualquier incertidumbre que pudiese haber respecto a si la Comisión podía fiscalizar los servicios de las agencias respecto a alojamiento. La enmienda a la Ley de Servicio Público de Puerto Rico ratificaba así lo que la Comisión venía haciendo en el ejercicio del poder reglamentario que se le había delegado.

Por todo lo anterior, es evidente que la Comisión tenía autoridad para reglamentar los servicios de alojamiento prestados por agencias de viajes, al momento que se trajo a su consideración la querella ante nos.

## II

Establecido que la Comisión tenía autoridad para resolver disputas sobre la actividad de alojamiento, veamos si

---

([9]) Véase Informe Conjunto de las Comisiones de lo Jurídico y de Asuntos del Consumidor sobre el P. del S. 749 de 24 de mayo de 1990, pág. 4.

la querellada incurrió en una violación que amerite la concesión de daños a tenor con el Art. 20 de la Ley de Servicio Público de Puerto Rico, 27 L.P.R.A. sec. 1107.

El Art. 20 (a) de la Ley de Servicio Público de Puerto Rico, 27 L.P.R.A. sec. 1107(a), dispone:

> Cuando la Comisión, luego de celebrada audiencia determinare que cualquiera tarifa cobrada, *acto realizado u omitido*, o práctica puesta en vigor ha infringido cualquier orden, *fuere injusta o irrazonable*, estableciere diferencias o preferencias injustificadas o indebidas o que la tarifa cobrada excede la radicada, publicada y vigente a la fecha en que se prestó el servicio, *podrá ordenar a la compañía* de servicio público o porteador por contrato que pague al perjudicado, dentro del tiempo razonable que se especifique, el importe de *los daños y perjuicios sufridos como resultado de la tarifa, acto, omisión o práctica injusta, irrazonable o ilegal*. La orden que a ese efecto se expida contendrá conclusiones de hechos y la cuantía que ha de pagarse. (Énfasis suplido.)

Este Tribunal, interpretando el alcance y contenido del Art. 20, *supra*, señaló en el caso de *Vera v. Pavesi*, 116 D.P.R. 55, 58 (1985):

> Somos del criterio que dicho precepto legal faculta a la Comisión de Servicio Público a conceder indemnización monetaria a un usuario de una compañía de servicio público, o porteador por contrato, únicamente en aquellos casos en que éste se ve afectado o sufre daños: 1—al ser "víctima" de una tarifa, práctica puesta en vigor, acto u omisión que (*a*) infrinja cualquier orden de la Comisión, o (*b*) resulta injusta o irrazonable, o (*c*) establece diferencias o preferencias injustificadas o indebidas, y 2—cuando le es cobrada una tarifa que excede la radicada, publicada y vigente a la fecha en que se prestó el servicio. (Énfasis suprimido y escolio omitido.)

En el caso ante nuestra consideración, los querellantes alegan que la querellada fue negligente al no cumplir con lo ofrecido en la excursión que les vendió y al no velar, además, por la seguridad debida a sus vidas y sus bienes. La querellada por su parte alega que los daños sufridos por los querellantes se debieron sencillamente al hecho impre-

visible del hurto de la cartera durante horas de la noche. Procede determinar si la reclamación implicada es "puramente de derecho civil" o si implica una violación a las obligaciones que emanan de la relación usuario-compañía de servicio.

■ A tenor con lo señalado en *Vera v. Pavesi*, supra, una reclamación pura de derecho civil es aquella en la que no se requiere ninguna clase de conocimiento especializado para resolver la reclamación en controversia. Aunque exista una relación usuario-compañía de servicios, ésta queda opacada por los derechos y la posible responsabilidad de terceros. En cambio, cuando la *reclamación tiene una relación directa y sustancial con el servicio público que presta la empresa*, se requiere aplicar el conocimiento especializado de la agencia para resolver la reclamación. Véase *Rovira Palés v. P.R. Telephone Co.*, 96 D.P.R. 47, 52–53 (1968).

En este caso existe una reclamación que tiene una relación directa y sustancial con el servicio público que presta la empresa. La Comisión, aplicando su conocimiento especializado sobre estos asuntos, determinó que la agencia querellada no proveyó alojamiento que fuese adecuado. Ello surge claramente de las determinaciones de hecho de la Comisión en el sentido de que en el motel que se le consiguió a los querellantes, el acondicionador de aire no funcionaba, el lavamanos del baño estaba tapado, la estufa era prácticamente inservible y el lugar ofrecía poca seguridad.

Si bien es cierto que los hechos incluyen un hurto, que por sí sólo es un acto cuya dilucidación no requiere la aplicación del conocimiento especializado de la Comisión, no se puede afirmar que el hurto fue la única razón o móvil de los querellantes para solicitar compensación por los daños

sufridos.[10] El hurto no fue un incidente que opacara la relación usuario-compañía de servicio público, como ocurrió en el caso de *Vera v. Pavesi*, supra. Más bien, fue otro evento más dentro de la cadena de incidentes generados por la omisión de la agencia de viajes de seleccionar un lugar de hospedaje adecuado, máxime cuando los servicios que serían prestados a los querellados se ofrecerían fuera de su país de origen.

Determinar si la omisión en que incurrió la agencia constituye una práctica ilegal e injusta a tenor con el Art. 20 de la Ley de Servicio Público de Puerto Rico, *supra*, es una función típica de la Comisión. A este organismo, primordialmente, le corresponde determinar si una omisión de una agencia de viajes resulta en perjuicio de las actividades de venta de pasajes y reserva de alojamiento. Estas actividades caen bajo el ámbito de reglamentación de la Comisión según establecimos al comienzo de esta opinión. La Comisión tiene un alto interés en atender estos casos. La práctica de no proveer alojamiento adecuado va en detrimento de los usuarios de estos servicios. Los expone a gastos innecesarios y pérdida de vacaciones. Aunque la agencia de viajes no puede garantizar en todos los casos la seguridad de los usuarios, por estar en mejor posición que ellos por su experiencia en este campo, al ofrecer viajes integrales a sus clientes debe hacer todo lo posible por procurarles alojamiento que tenga un mínimo de seguridad y calidad, al menos en situaciones como la presente donde la agencia ha anunciado y vendido un viaje integral (*package tour*) que era el objeto del contrato entre las partes. En este caso la Comisión, basándose en su conocimiento especializado de estos asuntos, determinó que la agencia no cumplió con ese deber. Este Tribunal ha reiterado que una determinación de un organismo administra-

---

[10] El remedio solicitado a través de la querella fue la devolución total de los gastos incurridos y los daños sufridos con motivo de la negligencia de los querellados.

tivo merece deferencia al ser revisada por los tribunales apelativos. Estos deben ser cautelosos al intervenir con dichas determinaciones. Véase *Méndez & Co., Inc. v. D.A.C.O.*, 104 D.P.R. 707 (1976). Aquí la Comisión no abusó de su discreción. Condenó a los querellados a indemnizar a los querellantes con la suma de $2,000 luego de determinar que hubo una violación al Art. 20, *supra*, tal y como dicha ley ordena.

No encontramos irrazonable la suma de $2,000 adjudicada a los querellantes. La Comisión determinó en su resolución que esta suma iba dirigida a resarcir los daños materiales, los contratiempos, las angustias y los sufrimientos mentales ocasionados por la omisión de la querellada. Entre los daños materiales encontramos los objetos perdidos por la querellante Emma Berdecía ascendentes a $880. También el menoscabo y encarecimiento de las vacaciones que, producto del traslado a otro hotel, obligó a los querellantes a incurrir en gastos y trámites no contemplados.[11] Por último, y suficiente por sí sólo para otorgar la cantidad aludida, están las angustias y los sufrimientos mentales que le ocasionó a los querellantes el haber estado expuestos a perder sus vidas. Hemos reconocido que las angustias mentales son daños que pueden ser compensados. Véanse: *Camacho v. Iglesia Católica*, 72 D.P.R. 353 (1951); *Pereira v. I.B.E.C.*, 95 D.P.R. 28 (1967). Por lo tanto, no hay duda que estamos ante un daño resarcible por ser uno que afecta la condición anímica de la persona.

Por las razones antes expuestas, *se revoca la sentencia del Tribunal Superior y se confirma la resolución y orden de la Comisión de Servicio Público de Puerto Rico.*

El Juez Asociado Señor Rebollo López disintió sin opi-

---

[11] Ejemplo de ello es el tiempo empleado para evitar el uso sin autorización de tarjetas de crédito y cheques de viajero.

nión escrita. El Juez Asociado Señor Hernández Denton disintió con opinión escrita, a la cual se unió la Juez Asociada Señora Naveira de Rodón.

— O —

Opinión disidente emitida por el Juez Asociado Señor Hernández Denton, a la cual se une la Juez Asociada Señora Naveira de Rodón.

Por entender que cuando ocurrieron los problemas que origina la controversia de autos, la Comisión de Servicio Público de Puerto Rico (en adelante Comisión) no tenía jurisdicción para adjudicar la querella por las servicios de alojamiento suministrados por las agencias de pasajes, disentimos de la opinión del Tribunal.

I

Al evaluar este recurso recordamos que en *P.R. Lighterage Co. v. Caribe Tugboat Corp.*, 111 D.P.R. 686, 691–692 (1981), concluimos que "[n]i la Comisión ni los tribunales pueden añadir tipos de empresa a las que define la Asamblea Legislativa como de servicio público .... La Comisión de Servicio Público de Puerto Rico no puede asumir jurisdicción sobre clase alguna de actividad que no esté *claramente* autorizada por ley para ello". También, al igual que el Tribunal Superior, partimos de la premisa de que "en este caso la única queja de los viajeros querellantes es con relación a la calidad del sitio escogido por la empresa querellada para dar el servicio de alojamiento, y no hay queja de clase alguna relacionada con el viaje en sí". Apéndice, pág. 156.

Por su naturaleza, a la Comisión le aplican las normas elementales vigentes en derecho administrativo. En particular, su jurisdicción está determinada por la Asamblea

Legislativa quien le delegó los poderes para reglamentar un área de la economía. Al promulgar un reglamento, la Comisión puede complementarlo, pero no puede "sustituir el criterio legislativo o judicial plasmado en el estado de derecho vigente". *Aulet v. Depto. Servicios Sociales*, 129 D.P.R. 1, 24 (1991). Véase, además, *A.P.I.A.U., Inc. v. Srio. de Hacienda*, 100 D.P.R. 173 (1971).

En 1985, al amparo del Art. 14 de la Ley de Servicio Público de Puerto Rico, 27 L.P.R.A. sec. 1101, la Comisión estaba autorizada a adjudicar reclamaciones contra las agencias de pasajes únicamente en cuanto a *"la venta u ofrecimiento en venta de pasajes en Puerto Rico* para el transporte aéreo, terrestre o acuático de personas para lugares dentro o fuera de Puerto Rico ...". (Énfasis suplido.) 27 L.P.R.A. sec. 1002(w). En vista de nuestros pronunciamientos en *P.R. Lighterage Co. v. Caribe Tugboat Corp.*, supra, el Tribunal Superior interpretó correctamente el poder adjudicativo de la Comisión y no encontró en la ley "nada que pueda tan siquiera sugerir que el servicio de gestionar alojamiento para un viajero es una actividad cubierta por la ley". Apéndice, pág. 156.

Mientras el recurso estaba pendiente ante esta Curia, la Asamblea Legislativa enmendó la Ley de Servicio Público de Puerto Rico en 1990. Conscientes de los poderes limitados concedidos a la Comisión para reglamentar las agencias de pasajes, la Asamblea Legislativa en 1990 amplió la jurisdicción de la agencia mediante la Ley Núm. 50 de 22 de agosto de 1990. La exposición claramente revela que la intención legislativa era otorgar nuevos poderes a la Comisión sobre actividades que no estaban bajo su jurisdicción.

El desarrollo económico imperante en el país ha hecho posible que las empresas que ofrecen servicios y bienes al pueblo se hayan expandido en áreas que no estaban contempladas en épocas pasadas. Es nuestro propósito ampliar la jurisdicción de la Comisión de Servicio Público para que se enfrente a las condiciones cambiantes de la sociedad y haga un mejor uso de la

experiencia adquirida en años anteriores en beneficio del interés público.

Para lograr el anterior objetivo es necesario enmendar la Ley Núm. 109 de 28 de junio de 1962, según enmendada, a los fines de proveerle jurisdicción a la Comisión de Servicio Público para fiscalizar nuevos servicios y nuevas empresas que prestan servicios públicos.

Nos proponemos ampliar la jurisdicción de la Comisión de Servicio Público para que fiscalice las empresas que realizan servicios que están íntimamente unidos a la venta de pasajes, a las empresas que prestan servicio, venta, reparación y ajuste de metros de taxis, así como de vehículos públicos; a las empresas dedicadas a prestar servicio de venta, distribución, reconstrucción y reparación de cilindros para el gas licuado de petróleo; y establecer penalidades por alterar metros de vehículos de servicio público y la violación del requisito de licencia para su venta o reparación. Exposición de Motivos de la Ley Núm. 50 de 22 de agosto de 1990, Leyes de Puerto Rico, pág. 1.

Con estos propósitos el estatuto, específicamente, amplió los nuevos servicios ofrecidos por las agencias de pasajes e incluyó las *"reservaciones de alojamiento*, entretenimiento o transportación terrestre o confección *y venta de viajes integrales (excursiones) dentro o fuera de Puerto Rico"*. (Énfasis suplido.)

En su comparecencia ante la Comisión de Asuntos del Consumidor el Presidente de la Comisión de Servicio Público de Puerto Rico expresamente reconoció que en 1990, en lo referente a las agencias de pasajes, "la única actividad específica que esta[ba] sujeta a nuestra jurisdicción [era] l[a] relacionad[a] con la venta de pasajes". Memorial del Lcdo. Enrique Rodríguez Rodríguez, Presidente de la Comisión de Servicio Público de Puerto Rico a la Hon. Elsie Calderón de Hernández, Presidente de la Comisión de Asuntos del Consumidor, P. del S. 749 de 23 de abril de 1990, pág. 3. Ante la realidad de que estas empresas llevan a cabo otras funciones que generaban infinidad de querellas ante la Comisión, el licenciado Rodríguez Rodríguez recomendó que se ampliara la jurisdicción de la agencia para expresamente incluir estas nuevas actividades de las

agencias de pasajes y permitirle a la entidad, mediante un procedimiento adjudicativo, dilucidar las reclamaciones presentadas en su contra.

La Asamblea Legislativa acogió esta propuesta y enmendó la ley para autorizar a la Comisión a reglamentar estos nuevos servicios y adjudicar reclamaciones a la luz de la prueba sometida por las partes. Al amparo de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, la Comisión tiene que adjudicar formalmente cualquier reclamación salvaguardando los derechos de las partes afectadas. 3 L.P.R.A. secs. 2151–2169.

Aunque con posterioridad a la presentación del caso ante este Tribunal, la acción legislativa amplió los poderes delegados a la Comisión y aumentó la protección de los consumidores para incluir otros servicios ofrecidos por las agencias de pasajes, no podemos endosar la tesis mayoritaria de que las enmiendas de 1990 fueron para aclarar las facultades que la Comisión ya tenía. De la exposición de motivos de la Ley Núm. 50, *supra*, y de las declaraciones del propio Presidente de la Comisión claramente se desprende que, como dichas actividades no estaban bajo la jurisdicción de la Comisión, estas enmiendas tenían el propósito de aumentar sus poderes y no de aclararlos.

No obstante esta aceptación de la Asamblea Legislativa, de que antes de 1990 la Comisión no tenía jurisdicción para adjudicar querellas contra agencias de pasajes relativas a las reservaciones de alojamiento, hoy una mayoría de este Tribunal resuelve lo contrario y corrige la omisión que tenía anteriormente la Ley de Servicio Público de Puerto Rico. No podemos refrendar este acto de legislación judicial. Tampoco podemos suscribir la revocación *sub silentio* de *P.R. Lighterage Co. v. Caribe Tugboat Corp.*, supra.

## II

No obstante lo anterior, si presumiéramos que la Comisión tenía jurisdicción, procede en derecho devolver el caso al Tribunal Superior para que oportunamente evalúe el recurso de revisión presentado por la empresa. Como dicho foro únicamente adjudicó el planteamiento jurisdiccional, debe evaluar los otros errores señalados.

En particular, el Tribunal Superior deberá examinar si la Comisión violó el debido proceso de ley al adjudicar los daños reclamados, revocar la licencia de la agencia de pasajes e imponer una multa de $100, sin ofrecerle una oportunidad de ser oída.(¹)

Además, dicho foro debe revisar las determinaciones de hechos de la Comisión para verificar si están sostenidas por evidencia sustancial y evaluar si se justifica una indemnización de $2,000 por los problemas que surgieron en la excursión a Orlando, Florida, cuyo precio total fue de $399.00, por un viaje de diez días, incluyendo alojamiento para cinco personas y el alquiler de un automóvil.(²)

Por las razones anteriormente expuestas, disentimos.

---

(¹) De los autos se desprende que la empresa inicialmente objetó la jurisdicción de la Comisión para adjudicar la querella. También solicitó una posposición de la vista señalada aduciendo un conflicto en el calendario de su representación legal. La Comisión no tomó acción sobre estas peticiones y celebró la vista en la fecha señalada. Como la empresa no estuvo representada en esa vista, no pudo rebatir la prueba desfilada por el querellante. Tampoco pudo contrainterrogar a los testigos ni presentar su defensa.

(²) El Tribunal Superior deberá examinar cuidadosamente si la prueba sometida es suficiente para sostener la determinación de daños.