TEXTO COMPLETO DE LA RESOLUCION
La recurrente de epígrafe, Policía de Puerto Rico (en adelante PPR), interesa, mediante el recurso de revisión administrativa presentado, la revocación de una resolución emitida por la Junta de Apelaciones del *566 Sistema de Administración de Personal (en adelante JASAP) con fecha del 14 de septiembre de 1999. En la misma, el antedicho foro apelativo administrativo acogió el Informe presentado por la Oficial Examinadora, Wilda Ramos Román (en adelante la Oficial Examinadora), y declaró con lugar la apelación presentada por el aquí recurrido, Jorge L. Olmo Quintana. En consecuencia, JASAP le ordenó a la PPR a pagar los haberes dejados de percibir por este último desde la fecha de su destitución hasta la terminación de su nombramiento transitorio e instruyó a la recurrente a eliminar del expediente del señor Olmo Quintana todo lo referente al proceso de destitución de empleo por haber éste infringido los reglamentos y órdenes que penalizan el uso de sustancias controladas por miembros de la antedicha agencia.
Considerado el único error alegado por la PPR en su escrito, se deniega la expedición del auto de revisión solicitado.
I
El 2 de junio de 1994, el señor Jorge L. Olmo Quintana fue contratado como empleado civil transitorio en la PPR, ocupando el puesto de Oficinista I en la Unidad de Archivo de Personal de la Superintendencia Auxiliar en Servicios Generales de la agencia. Posteriormente, el recurrido fue enviado a trabajar en la División de Registro de Armas, siendo asignado al área de la ventanilla. Entre las funciones que diariamente el señor Olmo Quintana desempeñaba se destacaban el gestionar las solicitudes o renovaciones de licencias para portación y posesión de armas y el archivo de la documentación relacionada con el referido proceso, entre otras.
Así las cosas, el 13 de septiembre de 1996, la PPR, en conjunto con el Instituto de Ciencias Forenses, sometió a los empleados civiles de la División de Registro de Armas a unos exámenes de laboratorio como parte de un proceso interno para detectar la presencia de sustancias controladas en personas que laboran para la referida agencia. Luego de llevarse a cabo el proceso de rigor, el resultado de la muestra tomada al señor Olmo Quintana detectó la presencia de rastros de cocaína en su sistema. 
Como consecuencia del resultado positivo en el examen de laboratorio al cual fue sometido, el recurrido fue destituido de su puesto en la agencia mediante carta cursada el 31 de enero de 1997 por el Superintendente de la PPR, Ledo. Pedro A. Toledo Dávila. De conformidad al derecho que le asistía, el señor Olmo Quintana solicitó la celebración de una vista administrativa, la cual se celebró el 25 de marzo del mismo año. Posteriormente, mediante carta suscrita el 13 de mayo de 1997, el Superintendente de la PPR confirmó la destitución del aquí recurrido y le apercibió que podía apelar tal determinación ante JASAP.
Insatisfecho con la acción tomada por la agencia recurrente, el señor Olmo Quintana presentó, el 25 de junio de 1997, un escrito de apelación ante JASAP. En el mismo, el recurrido alegó que la PPR le violó las garantías del debido proceso de ley, tanto en las pruebas de dopaje llevadas a cabo como en la vista administrativa celebrada, y que la referida agencia carecía de un sistema de rehabilitación para empleados que dieran positivo en pruebas de detección de sustancias controladas, situación que era contraria a la ley. Oportunamente, la PPR contestó el escrito de apelación el 2 de octubre de 1997, aceptando trece (13) de las quince (15) alegaciones planteadas por el señor Olmo Quintana en su recurso. Posteriormente, el 2 de febrero de 1998, JASAP delegó el caso Número DT-97-06-2488 a la Oficial Examinadora.
Luego de celebrarse una vista de estatus de los procedimientos, presentar sus respectivos memorandos de derecho y ventilarse en su fondo el caso de marras, el 27 de agosto de 1999, la Oficial Examinadora rindió su informe a la JASAP. En el mismo, basado en la totalidad de la prueba y la credibilidad que le confirió a los testigos que tuvo ante sí, la referida funcionaría determinó que el procedimiento de detección de sustancias controladas al cual fue sometido el señor Olmo Quintana fue uno correcto e inequívoco que prevalecía ante la falta de presentación de evidencia por parte del recurrido para derrotar la presunción de corrección. Sin embargo, concluyó que las funciones asignadas al señor Olmo Quintana eran unas que no ponían en riesgo la seguridad y protección de vida o propiedad de los ciudadanos, fundamentos utilizados como justa causa por la PPR para avalar su decisión de destituir al recurrido. Por consiguiente, la funcionaría le recomendó a JASAP *567 declarar con lugar el recurso de apelación presentado por el señor Olmo Quintana contra la agencia recurrente y ordenarle a esta última a pagarle a su ex-empleado los haberes dejados de percibir desde la fecha de su destitución hasta la terminación de su nombramiento transitorio. En igiial medida, la Oficial Examinadora sugirió exigirle a la PPR eliminar del expediente del recurrido todo lo referente a la destitución.
Mediante resolución emitida el 14 de septiembre de 1999, JASAP adoptó en su totalidad el Informe rendido por la funcionaría, declarando con lugar la apelación del señor Olmo Quintana. En consecuencia, la aquí recurrente debía satisfacer el pago de los salarios que debieron ser devengados por el ex-empleado durante la vigencia de su nombramiento y eliminar de su expediente el proceso de destitución apelado. Esta resolución fue notificada el 16 de septiembre de 1999.
Oportunamente, la PPR presentó, el 28 de septiembre de 1999, una moción de reconsideración, la cual fue acogida por el foro apelativo administrativo el 8 de octubre del mismo año. En cumplimiento de la orden emitida en la antedicha fecha, el 18 de octubre de 1999, la parte recurrida presentó su escrito de oposición;
Expirado el término de noventa (90) días para que JASAP considerara la moción presentada sin ésta tomar acción alguna, el 26 de enero de 2000, la PPR presentó ante este Foro Apelativo el recurso de revisión que nos ocupa. En su escrito, la recurrente le señala a JASAP haber errado al determinar que las funciones realizadas por el señor Olmo Quintana en la División de Registro de Armas no estaban directamente relacionadas con la seguridad y protección de la vida o propiedad, lo cual ameritaba que el mismo fuera referido a un programa de rehabilitación.
Con el beneficio de la comparecencia de las partes de epígrafe, procedemos a examinar en sus méritos el caso que nos ocupa.
II
El proceso de revisión judicial de las decisiones emitidas por las agencias administrativas está reglamentado por la Ley Núm. 170 del 12 de agosto de 1988, conocida como Ley de Procedimiento Administrativo Uniforme, según enmendada (en adelante LPAU), 3 L.P.R.A. see. 2101 et seq. La sección 4.5 de la LPAU, 3 L.P.R.A. see. 2175, dispone, en lo pertinente, lo siguiente:

“Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.

Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. ”

Esta disposición requiere que los tribunales confirmen las determinaciones de hechos de una agencia administrativa si están sostenidas por evidencia sustancial que obra en el expediente administrativo. Vecinos del Hospital San Jorge v. United Medical Corporation, 2000 J.T.S. 21, op. del 19 de enero de 2000; La Facultad para las Ciencias Sociales Aplicadas, Inc. v. C.E.S., 133 D.P.R. 521 (1993). El concepto de evidencia sustancial ha sido definido por nuestro Tribunal Supremo como "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". Associated Insurance Agencies, Inc. v. Comisionado de Seguros, 97 J.T.S. 142, op. del 26 de noviembre de 1997; Hilton Hotels v. Junta de Salario Mínimo, 74 D.P.R. 670 (1953). Corresponde así a la parte que impugna la determinación de una agencia administrativa, el peso de establecer que la misma se tomó en ausencia de evidencia sustancial. Henríquez Soto v. C.E.S., 120 D.P.R. 194 (1987). En igual medida, para alegar que la evidencia en la cual se fundamentaron las determinaciones de hechos de la agencia no es sustancial, la parte afectada deberá demostrar que existe otra prueba en el récord que reduce o menoscaba el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda prudentemente concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. Misión Industrial v. Junta de Planificación (en adelante Misión Industrial v. Junta de Planificación II), 98 J.T.S. 79, op. del 30 de julio de 1998; Metropolitana S.E. v. *568 A.R.P.E., 138 D.P.R. 200 (1995); Hilton Hotels v. Junta de Salario Mínimo, supra.
Las conclusiones de derecho de la agencia, distinto a las determinaciones de hechos, podrán ser revisadas en todos sus aspectos por este Foro, sin sujeción a norma o criterio alguno. Puerto Rico Telephone Company v. Junta Reglamentadora de Telecomunicaciones de Puerto Rico, 2000 J.T.S. 98, op. del 12 de junio de 2000; Miranda v. Comisión Estatal de Elecciones, 96 J.T.S. 129, op. del 25 de octubre de 1996. Esto no significa, sin embargo, que al ejercer su función revisora, el tribunal pueda descartar libremente las conclusiones e interpretaciones de la agencia. Id. Por ello, nuestro Tribunal Supremo ha reiterado en innumerables ocasiones que las determinaciones, conclusiones e interpretaciones incluidas en dichas decisiones tendrán gran deferencia al ser revisadas por este Tribunal. García Oyóla v. Junta de Calidad Ambiental, 91 J.T.S. 25, op. del 21 de febrero de 1997; Metropolitana S.E. v. A.R.P.E., supra; Viajes Gallardo v. Clavell, 131 D.P.R. 275 (1992). Esta deferencia responde al reconocimiento de que las agencias administrativas poseen vasta experiencia y conocimiento especializado, siendo éstas instrumentos necesarios para la interpretación de la ley. Asociación de Vecinos del Hospital San Jorge v. United Medical Corporation, supra; T-JAC, Inc. v. Caguas Centrum, 99 J.T.S. 60, op. del 12 de abril de 1999; Reyes Salcedo v. Policía de Puerto Rico, 91 J.T.S. 58, op. del 13 de mayo de 1997.
Por consiguiente, frente a la impugnación de una decisión administrativa, los tribunales deberán limitarse a indagar sobre la razonabilidad de la misma y no deben sustituirlas por sus propios criterios, salvo que se infrinjan valores constitucionales fundamentales, Costa Wood v. Caguas Expressway Motors, 2000 J.T.S. 11, op. del 29 de diciembre de 1999; o que la misma sea claramente arbitraria o ilegal, o tan irrazonable que la actuación impugnada constituya un claro abuso de discreción. Municipio de San Juan v. Junta de Calidad Ambiental, 99 J.T.S. 152, op. del 5 de octubre de 1999; Misión Industrial v. Junta de Planificación II, supra; Misión Industrial v. Junta de Planificación, 91 J.T.S. 114, op. del 30 de junio de 1997.
III
El error que le imputa la PPR a JASAP se resume en dos premisas: la apreciación de la prueba que tuvo ante su consideración la Oficial Examinadora y su interpretación del derecho aplicable que fundamentó el Informe por ella vertido, el cual fue posteriormente adoptado en la resolución emitida por el foro apelativo administrativo. Veamos.
Es norma reiterada en nuestro ordenamiento jurídico que este Tribunal deberá conferirle deferencia a las decisiones emitidas por los foros administrativos, siempre y cuando las mismas se basen en evidencia sustancial que obre en el expediente del caso. Ello, porque éstos se encuentran en mejor posición para analizar, aquilatar y sopesar la prueba en un proceso adjudicativo formal que esté ante su consideración. En ausencia de criterios irrazonables, arbitrarios, ilegales o abuso de discreción en la decisión administrativa emitida, este Foro deberá limitarse única y exclusivamente a indagar sobre la razonabilidad de la misma y no deberá sustituirla por sus propios criterios.
En igual medida, como mencionáramos previamente en la parte II del presente escrito, la parte afectada por una decisión administrativa deberá demostrar que existe otra prueba en el récord que reduce o menoscaba el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. Ello no lo ha hecho la recurrente de epígrafe en el caso de autos.
En su función adjudicativa, JASAP utilizó como fundamento lo dispuesto en la Orden Ejecutiva del Gobernador del 26 de mayo de 1988 (Boletín Administrativo Número 5111-A, en adelante Boletín 5111-A), el cual enmendó la Orden Ejecutiva emitida el 9 de octubre de 1986 (Boletín Administrativo Número 4784, en adelante Boletín 4784). [5] El Boletín 5111-A tenía como objetivo principal establecer, conforme a la política pública enunciada en el mismo, programas de rehabilitación para empleados de gobierno que prestaran servicios en el área de seguridad pública y que dieran resultado positivo en los procesos de detección de sustancias *569 controladas. Al expresar sus conclusiones de derecho, la agencia citó el Artículo 2 del Boletín 5111-A, el cual dispone:
“El objetivo principal del programa será identificar a los usuarios de sustancias controladas y en la medida que sea posible lograr su rehabilitación para que puedan desempeñar fielmente sus funciones y deberes en el servicio público. Cuando se obtenga por primera vez un resultado positivo corroborado en un empleado o funcionario mediante una prueba para detectar la presencia de sustancias controladas, éste será referido al programa de orientación, tratamiento y rehabilitación establecido en el Artículo 5 de esta Orden y no se tomarán medidas disciplinarias en su contra, excepto cuando la condición detectada resulte incompatible con el desempeño efectivo de las funciones y deberes del puesto que ocupa, en cuyo caso el Jefe de la agencia podrá proceder a imponer la medida disciplinaria que entienda apropiada conforme a la reglamentación aplicable. ” (Enfasis nuestro).
Utilizando como referencia el texto previamente citado, y armonizando los principios esbozados en-ambos Boletines con las Ordenes Generales emitidas por el Superintendente de la PPR, la agencia concluyó que las funciones asignadas al señor Olmo Quintana no estaban directamente relacionadas con la seguridad y la protección de la vida o propiedad de los ciudadanos que tramitaban solicitudes en la División de Registro de Armas. Por consiguiente, éste debió haber tenido la oportunidad de acogerse a un programa de rehabilitación, el cual le hubiera permitido reintegrarse a sus labores regulares en la agencia recurrente, según la antedicha funcionaría. Esta interpretación de la compatibilidad de las funciones del señor Olmo Quintana y el resultado positivo del examen al cual fue sometido, nos merece gran deferencia.
Al analizar el expediente que tenemos ante nuestra consideración, no podemos concederle mérito a los planteamientos alegados por la recurrente en su escrito, los cuales pretenden alterar las interpretaciones formuladas por la agencia. Como se puede apreciar en los documentos que obran en autos, no existe evidencia alguna que demuestre indicios negativos o acción que atentara contra la seguridad de la PPR en el desempeño diario del señor Olmo Quintana como consecuencia del resultado positivo obtenido en la prueba de dopaje llevada a cabo. Sobre este particular, la Oficial Examinadora designada por JASAP tuvo, durante las vistas celebradas, la oportunidad de escuchar los testimonios vertidos y examinar los documentos presentados por las partes de epígrafe relacionados con el proceso de destitución del recurrido. Ello, razonablemente le permitió a la agencia formular la interpretación de derecho sobre las funciones que desempeñaba el señor Olmo Quintana que avalan sus conclusiones. Por consiguiente, ausente cualquier indicio de arbitrariedad, irrazonabilidad, ilegalidad o abuso de discreción por parte de la agencia en la resolución de este caso, no encontramos razón alguna para modificar o revocar el mismo.
IV
Por los fundamentos antes expuestos, se deniega la expedición del auto de revisión solicitado.
Así lo pronunció el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2001DTA 7
1. La determinación de Hecho Número 11 del Informe de la Oficial Examinadora dispone: "Los análisis de corroboración del apelante se hicieron el 11 de octubre de 1996 y el resultado fue de un 92% de probabilidad de haber usado cocaína." (Apéndice del recurso, página 6).
2. Es preciso señalar que el señor Olmo Quintana había recibido previamente una carta con fecha del 21 de noviembre de 1996 en la cual se le suspendía temporeramente y sumariamente del empleo. Dicha misiva fue sustituida por la carta del 31 de enero de 1997, la cual era una versión enmendada de la primera.
*570 3. La vista de estado de los procedimientos se llevó a cabo el 21 de abril de 1998, mientras que las vistas para ventilar el caso en su fondo se celebraron los días 9 y 11 de septiembre y 18 de noviembre del mismo año. En cuanto a las fechas de radicación de sus respectivos memorandos, el señor Olmo Quintana presentó su escrito el 20 de mayo de 1998, mientras que la PPR hizo lo propio el 19 de junio del antedicho año.
4. Ello, ya que se trataba de un empleado civil que laboraba en el Area de Registros de Armas en el cual tramitaba con documentos y no con armas. En igual medida, el funcionario no tomaba decisión alguna en cuanto a las solicitudes que diariamente tramitaba.
5. Es preciso señalar que ambos Boletines fueron utilizados por el entonces Superintendente de la PPR, Ledo. Ismael Betancourt Lebrón, para fundamentar la Base Legal de la Orden General Número 90-1, con fecha del 1 de abril de 1990, la cual incorporó un procedimiento para detectar el uso de sustancias controladas por los empleados de la antedicha agencia. La antedicha orden fue posteriormente complementada por la Orden Especial Número 90-18 del 1 de octubre de 1990, la cual reitera el proceso del examen para la detección de sustancias controladas en las transacciones investigativas internas de la PPR.