ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| DCMC LLC<br><br>RECURRENTE<br><br><br>V.<br><br><br><br>DEPARTAMENTO DE EDUCACIÓN<br><br>RECURRIDO | KLRA202400512 | *REVISIÓN JUDICIAL* procedente del Gobierno de Puerto Rico; Autoridad para el Financiamiento de la Infraestructura de Puerto Rico<br><br>_____<br>FEMA DR-4339-0323<br>_____<br><br>Sobre:<br><br>Impugnación de Subasta |
|---|---|---|

Panel integrado por su presidente el Juez Figueroa Cabán, el Juez Salgado Schwarz y el Juez Monge Gómez.

Salgado Schwarz, Carlos G., Juez Ponente

# **S E N T E N C I A**

En San Juan, Puerto Rico, a 15 de octubre de 2024.

Comparece ante nos DCMC, LLC ("DCMC" o "Recurrente"), quien nos solicita que revoquemos la adjudicación de la Subasta notificada el 27 de agosto de 2024 por el Departamento de Educación ("DE" o "Recurrido"). Mediante la notificación, el Recurrido informó que la Subasta había sido adjudicada a favor de IEM International INC ("IEM").

Por los fundamentos que exponemos a continuación, se ***revoca*** la determinación impugnada.

-I-

A continuación, exponemos los hechos pertinentes ante nuestra consideración.

El 6 de mayo de 2022, el DE emitió una Carta Circular núm. 040-2021-2022 a fin de crear la Oficina de Infraestructura y Reconstrucción del Departamento de Educación de Puerto Rico ("Oficina de Infraestructura"). El propósito de esta Oficina es "*supervisar y gestionar los*

*recursos necesarios para la construcción y restauración de la infraestructura afectada por los huracanes Irma y María, por los terremotos y por la pandemia del Covid-19.*"[1] Así, como parte de los esfuerzos del DE por atender los planteles escolares que se vieron afectados por los eventos naturales, se creó el *Request for Proposals for Grants Management Services for the Retrofit Design of 50 Schools for FEMA DR-4339-0323* ("RFP"). Este programa tiene como objetivo solicitar propuestas de las entidades interesadas que puedan servir de apoyo en el proceso de restauración de la infraestructura afectada.

Así las cosas, luego de recibidas las propuestas, el 26 de agosto de 2024[2], la Oficina de Infraestructura emitió un *Notice of Award*[3] indicando que la Subasta se adjudicó a favor de IEM por la cantidad de $2,205,525.00. El 28 de agosto de 2024, DCMC envió una carta al DE solicitando el expediente administrativo del RFP, así como las propuestas sometidas, evaluaciones y cualquier documento relacionado con el proceso de evaluación[4]. Ese mismo día, *RFQ Arquitectural and Engineer* respondió la solicitud indicando que una vez tuvieran toda la documentación, la notificarían.[5] Al no haber recibido la información solicitada, el 13 de septiembre de 2024, el Recurrente envió un segundo correo electrónico dando seguimiento a su solicitud.

Así las cosas, el 16 de septiembre de 2024 DCMC presentó una *Revisión Judicial de Adjudicación de Solicitud de Propuestas*. En síntesis, el Recurrente alega que la notificación de adjudicación fue defectuosa por carecer de elementos esenciales.

---

[1] Véase Carta Circular núm. 040-2021-2022, a la pág. 8.
[2] Notificado el 27 de agosto de 2024.
[3] Véase Apéndice del recurso, págs. 27-30.
[4] Véase Apéndice del recurso, pág. 32.
[5] Véase Apéndice del recurso, pág. 33.

-II-

## A. Revisión judicial

La Ley de Procedimiento Administrativo Uniforme[6] ("LPAU"), establece el alcance de la revisión judicial de las determinaciones de las agencias administrativas. La revisión judicial consiste, esencialmente, en determinar si la actuación de la agencia fue dentro de las facultades que le fueron conferidas por ley y si la misma es legal y razonable.[7] Es norma reiterada que los foros revisores han de conceder gran deferencia y consideración a las decisiones de las agencias administrativas debido a la vasta experiencia y conocimiento especializado de estas sobre los asuntos que les fueron delegados.[8] Conforme con lo anterior, las decisiones de las agencias administrativas están revestidas de una presunción de regularidad y corrección.[9] Por lo tanto, los tribunales deben ser cautelosos al intervenir con las decisiones de los organismos administrativos[10]. La presunción de corrección que acarrea una decisión administrativa deberá sostenerse por los tribunales, a menos que logre ser derrotada mediante evidencia en contrario que obre en el expediente administrativo.[11]

Por su parte, es menester señalar que, al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad de la actuación de la agencia.[12] Como parte de este análisis, el tribunal debe

---

[6] Ley Núm. 38 de 30 de junio de 2017, según enmendada. 3 LPRA § 9601 et seq.

[7] *Capó Cruz v. Jta. de Planificación, et al.*, 204 DPR 581, 590-591 (2020); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *T-JAC v. Caguas Centrum Limited*, 148 DPR 70, 80-81 (1999).

[8] *Graciani Rodríguez v. Garage Isla Verde, LLC*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, supra; *Mun. San Juan v. Plaza Las Américas*, 169 DPR 310, 323-324 (2006).

[9] *Capó Cruz v. Junta de Planificación*, supra, pág. 591; *Rolón Martínez v. Supte. Policía*, supra; *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008).

[10] *Metropolitana, S.E. v. A.R.P.E.*, 138 DPR 200, 213 (1995); *Gallardo v. Clavell*, 131 DPR 275, 289-290 (1992).

[11] *Misión Ind. P.R. v. J.P.*, 146 DPR 64, 131 (1998).

[12] *Rebollo v. Yiyi Motors*, 161 DPR 69, 76 (2004).

determinar si la agencia actuó de forma arbitraria, ilegal o de manera tan irrazonable que su actuación constituyó un abuso de discreción.[13] A tales efectos, el tribunal debe considerar los siguientes criterios: a) si el remedio concedido por la agencia fue apropiado; b) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad y c) si, mediante una revisión completa y absoluta, las conclusiones de derecho de la agencia fueron correctas.[14]

Ahora bien, cuando se trate de conclusiones de derecho que no involucren interpretaciones dentro del área de especialización de la agencia, estas se revisarán por los tribunales sin circunscribirse al razonamiento que haya hecho la agencia.[15] En el escenario de que las determinaciones de la agencia involucren cuestiones mixtas de hechos y de derecho, el tribunal tendrá amplia facultad para revisarlas, como si fuesen una cuestión de derecho revisable en toda su extensión.[16] En nuestro ordenamiento jurídico es norma reiterada que, en el proceso de revisión judicial, los tribunales tienen la facultad de revocar al foro administrativo en materias jurídicas.[17]

### B. Subasta

Las subastas son el medio a través del cual se invita a varios proponentes a presentar ofertas para la adquisición de bienes y servicios.[18] Debido a su impacto al erario, nuestro Tribunal Supremo ha reconocido el alto interés público del

---

[13] *Rolón Martínez v. Supte. Policía, supra*, pág. 35.
[14] *Rolón Martínez v. Supte. Policía, supra*, págs. 35-36; *Pagán Santiago, et al. v. ASR*, 185 DPR 341, 358 (2012).
[15] *Capó Cruz v. Junta de Planificación, supra*, pág. 591; *Rivera v. A & C Development Corp.*, 144 DPR 450, 461 (1997).
[16] *Rivera v. A & C Development Corp., supra*, pág. 461.
[17] 3 LPRA § 9675.
[18] *Transporte Rodríguez v. Jta. Subastas*, 194 DPR 711, 716 (2016).

proceso de subastas en el gobierno.[19] El fin primordial del proceso de subasta "*es proteger los fondos públicos, fomentando la libre y diáfana competencia entre el mayor número de licitadores posibles.*"[20] Lo anterior procura evitar influencias contrarias al beneficio público.[21]

A su vez, por medio de las subastas gubernamentales, el Gobierno tiene mayor oportunidad de obtener el mejor contrato y así proteger los intereses y activos contra el dispendio, el favoritismo, la corrupción y el descuido al otorgarse los contratos.[22] De esta forma, el Gobierno podrá llevar a cabo sus funciones como comprador de una manera eficiente, honesta y correcta para proteger el erario.[23]

La Administración de Servicios Generales es "*la entidad gubernamental responsable de implementar la política pública relativa a la adquisición de bienes y servicios no profesionales del Gobierno de Puerto Rico*".[24] El artículo 31 de la Ley Núm. 73 de 23 de julio de 2019, también conocida como *Ley de la Administración de Servicios Generales para la Centralización de las Compras del Gobierno de Puerto Rico de 2019* (Ley 73-2019) dispone que los procedimientos para las compras y subastas de bienes, obras y servicios no profesionales se realizarán utilizando uno de los siguientes métodos de licitación: 1. Compra informal; 2. Subasta informal; 3. Subasta formal; 4. Solicitud de propuestas y/o solicitud de propuestas selladas y/o *request for proposal*

---

[19] *Íd.*; *Caribbean Communications v. Pol. de P.R.*, 176 DPR 978, 994 (2009); *Hatton v. Mun. de Ponce*, 134 DPR 1001, 1005-1006 (1994); *Great Am. Indem. Co. v. Gobierno de la Capital*, 59 DPR 911, 916 (1942).
[20] *Transporte Rodríguez v. Jta. Subastas, supra*, pág. 716; *Empresas Toledo v. Junta de Subastas*, 168 DPR 771, 778 (2006).
[21] *Íd.*
[22] *Transporte Rodríguez v. Jta. Subastas, supra*, págs. 716-717; *Costa Azul v. Comisión*, 170 DPR 847, 854 (2007); *AEE v. Maxon*, 163 DPR 434, 439 (2004).
[23] *Transporte Rodríguez v. Jta. Subastas*, supra, pág. 717.
[24] Exposición de Motivos de la Ley Núm. 73 de 23 de julio de 2019, conocida como *Ley de la Administración de Servicios Generales para la Centralización de las Compras del Gobierno de Puerto Rico de 2019*; Véase, además, artículo 24 de la Ley 73-2019. 3 LPRA § 9834.

(RFP); o 5. Solicitud de cualificaciones y/o request for qualifications (RFQ).[25]

   **C. Ley de la Administración de Servicios Generales para la Centralización de las Compras del Gobierno de Puerto Rico de 2019**

   Una vez adjudicada la subasta, el organismo correspondiente procederá a notificar la determinación final, según lo establecido en el *Reglamento Uniforme de Compras y Subastas de Bienes, Obras y Servicios no Profesionales de la Administración de Servicios Generales del Gobierno de Puerto Rico*. La notificación de adjudicación estará debidamente apoyada con los fundamentos que justifican la determinación, aunque sea de forma sucinta, a fin de que los foros revisores puedan examinar tales fundamentos y así determinar si la decisión fue arbitraria, caprichosa o irrazonable. A tales efectos, la notificación tiene que incluir, como mínimo, lo siguiente: 1. Nombres de los licitadores que participaron en la subasta y una síntesis de sus propuestas; 2. Factores o criterios que se tomaron en cuenta para adjudicar la subasta; 3. Los defectos, si alguno, que tuvieran las propuestas de los licitadores perdidosos y 4. La disponibilidad y el plazo para solicitar Revisión administrativa ante la junta revisora de subastas de la Administración de Servicios Generales y revisión judicial.[26]

-III-

   DCMC impugnó la notificación de adjudicación de subasta alegando que esta no cumple con los requisitos mínimos que exige la legislación. Veamos.

   De un análisis de la notificación en cuestión surge que el DE no incluyó una síntesis de las propuestas de todos los licitadores. Tampoco incluyó los criterios que tomaron en

---

[25] Véase artículo 31 de la Ley 73-2019. 3 LPRA § 9834g.
[26] 3 LPRA § 9834h.

consideración al momento de adjudicar la subasta. Sobre este particular, la notificación se limita a señalar lo siguiente: "*The Evaluation Committee used the criteria outlined in the RFP to complete a checklist ensuring all aspects of each proposal were covered*".[27] Finalmente, es menester señalar que la notificación no hace referencia a la disponibilidad ni al plazo que tienen los licitadores perdidosos de solicitar una revisión administrativa y judicial, incumplimiento que lacera el debido proceso de ley de los licitadores.

Conforme con lo anterior, nos es forzoso concluir que la notificación de adjudicación de subasta no se hizo conforme a derecho, por lo que procede la revocación de la determinación emitida por el DE.

-IV-

Por los fundamentos antes discutidos, ***revocamos*** el dictamen recurrido y devolvemos al foro de origen para que notifique conforme a derecho.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[27] Véase Apéndice del recurso, pág. 30.