Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel II

| WILTON R. DUEÑO JESURÚN<br>Recurrente<br><br>v.<br><br>RENÉ JR. AUTO REPAIR<br>Recurrido | KLRA202400318 | *Revisión Judicial* procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm. SAN-2023-0013248<br><br>Sobre:<br>Talleres de Mecánicas de Automóviles |

Panel integrado por su presidente, el Juez Bermúdez Torres, el Juez Adames Soto y la Juez Aldebol Mora

Adames Soto, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de agosto de 2024.

Compare el señor Wilton R. Dueño Jesurún (señor Dueño Jesurún o recurrente) mediante *recurso de revisión judicial*, solicitando que revoquemos una *Resolución* emitida por el Departamento de Asuntos del Consumidor (DACo), el 16 de mayo de 2024. Mediante dicho dictamen, el DACo ordenó el cierre y archivo de la *Querella,* por causa de la incomparecencia y falta de interés del recurrente.

Por los fundamentos que expresaremos, determinamos revocar la *Resolución* recurrida.

I.     **Resumen del tracto procesal**

El 28 de diciembre de 2022, el señor Dueño Jesurún presentó *Querella* ante el DACo, aduciendo daños causados a su vehículo de motor,[1] un Pontiac Grand Prix del 1992, por René Jr. Auto Repair (René Jr. Auto Repair o recurrido). A tales efectos el señor Dueño Jesurún adujo que, en

---
[1] *Querella* núm. SAN-2023-0013248.

NÚMERO IDENTIFICADOR

SEN2024_____

junio de 2020, contrató los servicios de René Jr. Auto Repair para la reparación de su vehículo, pues no encendía. Sostuvo que, al momento de entregar el vehículo, este tenía un valor de $2,000.00, y se encontraba en excelentes condiciones de hojalatería y pintura. No obstante, indicó que René Jr. Auto Repair se demoró en hacerle las pruebas pertinentes al vehículo, y lo dejó en la calle. Añadió que, como consecuencia de que el recurrido no colocó el vehículo dentro del taller de mecánica, recibió un golpe en la puerta delantera del lado del conductor. Ante ello, el señor Dueñor Jesurún afirmó que trató de comunicarse con el recurrido, por medio de llamadas, pero este no respondió.

Abundando sobre las alegaciones contenidas en la *Querella*, el recurrente afirmó que el referido vehículo pasó varios días en la calle sin ser atendido por René Jr. Auto Repair, razón por la cual recibió una multa, al tener vencido el marbete. Además, manifestó que, una vez el recurrido comenzó a trabajar en el vehículo, le indicó que la bomba de agua estaba dañada, pero no la conseguía, y perdió la llave del auto.

Por lo anterior, el señor Dueño Jesurún solicitó al DACo que le ordenara a René Jr. Auto Repair el pago de los daños a la hojalatería del vehículo, incluyendo las abolladuras, dobleces, rayazos, y el pago de la multa y la llave perdida.

A raíz de ello, el 2 de febrero de 2023, el DACo le notificó la *Querella* a René Jr. Auto Repair.

Luego, el 6 de febrero de 2023, el recurrente presentó una enmienda a la *Querella,* a los fines de incluir una dirección del recurrido.

Ese mismo día, el DACo le notificó la enmienda a Rene Jr Auto Repair.

Posteriormente, el 16 de marzo de 2023, el DACo notificó a las partes una *Citación de Inspección* al vehículo. A tenor, la agencia administrativa citó a las partes para estar presentes en Rene Jr. Auto Repair, el 19 de abril de 2023, a las 9:30 a.m., para inspeccionar el vehículo.

Realizada la inspección, el 25 de abril de 2023, el DACo notificó a las partes el correspondiente *Informe de Inspección* del vehículo, preparado por un técnico automotriz de la agencia.

Citadas las partes para celebrar la vista administrativa en su fondo, esta fue celebrada en la Oficina Regional del DACo en San Juan, el 26 de septiembre de 2023, ante el juez administrativo Lic. David Sánchez Rosario. Según fue recogido en la *Minuta[2]* que se levantó sobre las incidencias allí ocurridas, comparecieron a la vista el querellante, señor Dueño Jesurún, y el querellado, señor René Rodríguez De Jesús h/n/c René Jr. Auto Repair, ambos por derecho propio. Habiéndole tomado juramento a las partes, el señor Dueño Jesurún tuvo oportunidad de presentar toda su prueba, para lo cual se marcaron como exhibits los siguientes documentos: (1) Licencia de vehículo de motor 2019; (2) Certificación Oficial de Multas Administrativas; (3) Recibo derechos de vehículos; (4) Licencia de vehículo de motor 2020; (5) 4 multas, y (6) fotos de estacionamiento. Además, se marcó como identificación del recurrente: (1) un Reporte de Multas Administrativas, y (2) unas fotos. Entonces, luego del recurrente haber testificado sobre los hechos que alegó, el recurrido solicitó la suspensión de la vista para contratar a un abogado. DACo accedió a tal pedido, concediéndole un término de treinta días para ello.

A pesar de que ya el señor Dueño Jesurún había presentado su prueba en la vista en su fondo, (de modo que solo quedaba por considerar la prueba que se dispusiera a presentar el querellado, si alguna), en una fecha posterior, el 21 de marzo de 2024, se celebró otra vista en el DACo pero *sobre el estado de los procedimientos*. A esta comparecieron el señor Dueño Jesurún, asistido por el Lcdo. Melvyn Fontán Loada, y el señor René Rodríguez De Jesús h/n/c René Jr. Auto Repair, asistido por el Lcdo. Ángel M. Martínez. Conforme surge del expediente, esta vista fue atendida por un segundo Juez Administrativo, el Lcdo. Gabriel Jaime Sicardó Ocasio, que

---

[2] Anejo VI del apéndice del recurso de revisión judicial, pág. 22-23.

informó a las partes que, después de realizar una búsqueda exhaustiva, no fue posible obtener la grabación de la vista administrativa celebrada el 26 de septiembre de 2023 ante el primer Juez Administrativo, que cesó en sus funciones en el DACo. Ante tal situación, este segundo Oficial Examinador dispuso que era necesario celebrar una nueva vista administrativa, en cumplimiento con las disposiciones de la Sección 3.13 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico,* Ley Núm. 38-2017, (LPAU), 3 LPRA sec. 9653. Pero antes, el Juez Administrivo dispuso para la celebración de otra *vista sobre el estado de los procedimientos,* el 15 de mayo de 2024. De igual forma, ordenó: (1) que el representante legal del recurrente presentara una solicitud para asumir la representación; (2) que las partes examinaran y evaluaran el *Informe de Inspección* que emitió el DACo, y se expresaran sobre su contenido dentro del término de 20 días; (3) que las partes coordinaran entre sí una fecha para reunirse y celebrar una *Conferencia con Antelación a la Vista Administrativa,* y prepararan un *Informe con Antelación a la Vista Administrativa.*

También, el foro recurrido apercibió: (1) al querellante que si no ingresaba a la videoconferencia de la vista, se podría ordenar la desestimación y archivo de la *Querella* por abandono y/o falta de interés; (2) al querellado que eliminaría su alegaciones de no comparecer. Además, dispuso que cualquier solicitud de suspensión debía hacerse por escrito y radicarse por lo menos con cinco días laborables de antelación al señalamiento notificado, a menos que se tratara de eventos no previsibles o fuera del control del solicitante. Añadió que, cuando una parte incumpliera con el referido procedimiento, se le podría imponer sanciones a tenor con el Reglamento de Procedimientos Adjudicativos.

El próximo incidente procesal del que tenemos conocimiento a través de los documentos que surgen del apéndice del *recurso de revisión judicial,* es la notificación de la *Resolución* recurrida, de 16 de mayo de 2024,

mediante la cual el DACo ordenó el cierre y archivo de la *Querella, por incomparecencia y falta de interés de la parte querellante[3]*. Es de notar que en esta determinación intervino una tercera Juez Administrativa, la Lcda. Yasiris M. Torres Rivera. En el contenido de la *Resolución* se indicó que el señor Dueño Jesurún, no había comparecido a la vista de estatus señalada para el 15 de mayo de 2024, sin que presentara excusa, a pesar de haber sido debidamente citado. Se añadió, que como el recurrente tenía el peso de la prueba, procedía el cierre y archivo de la *Querella* por su incomparecencia y falta de interés. Por último, se indicó que el recurrente tampoco cumplió con las órdenes emitidas el 26 de marzo de 2024.

Inconforme, el recurrente acude ante nosotros, planteando los siguientes errores:

> Erró el Departamento de Asuntos del Consumidor al ordenar el cierre y archivo de la querella.
>
> Erró el Departamento de Asuntos del Consumidor abusando de su discreción al decretar el archivo de la querella, cuando en el presente caso, el propio foro administrativo DACO perdió la grabación de la vista administrativa donde la parte querellante había presentado su prueba y su caso.

El 20 de junio de 2024, emitimos *Resolución* concediéndole 30 días al recurrido para presentar escrito en oposición. Sin embargo, tras concederle una prórroga, el 12 de agosto de 2024, el recurrido instó *Escrito en Cumplimiento de Orden,* a los solos fines de informar que estaba sometiendo el asunto por el expediente.

## II. Exposición de Derecho

### A. La Revisión Judicial

La LPAU, 3 LPRA sec. 9601 *et seq.*, dispone sobre el alcance de la revisión judicial de las determinaciones de las agencias. Tanto la referida ley, como la jurisprudencia aplicable, establecen que la función revisora de las decisiones administrativas concedida a los tribunales apelativos consiste esencialmente en determinar si la actuación de la agencia fue

---

[3] Anejo VIII del recurso de revisión judicial, pág. 31.

dictada dentro de las facultades que le fueron conferidas por ley y si la misma es legal y razonable. *T–JAC, Inc. v. Caguas Centrum Limited*, 148 DPR 70, 80 (1999). Al respecto, es norma de derecho que los tribunales apelativos han de conceder gran deferencia a las decisiones de los organismos administrativos, en vista de la vasta experiencia y conocimiento especializado. *Graciani Rodríguez v. Garage Isla Verde, LLC,* 202 DPR 117, 126 (2019); *Mun. de San Juan v. Plaza Las Américas*, 169 DPR 310, 323 (2006); *Hernández Álvarez v. Centro Unido*, 168 DPR 592, 615–616 (2006). Por lo tanto, los tribunales deben ser cautelosos al intervenir con las decisiones administrativas. *Metropolitana, S.E. v. A.R.P.E.*, 138 DPR 200, 213 (1995); *Viajes Gallardo v. Clavell*, 131 DPR 275, 289–290 (1992).

Al momento de revisar una decisión administrativa el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. *Rebollo v. Yiyi Motors, Motors*, 161 DPR 69, 76 (2004). Conforme a lo cual, habrá que determinar si la actuación de la agencia fue arbitraria, ilegal, caprichosa o tan irrazonable que constituyó un abuso de discreción. *Mun. De San Juan v. CRIM*, 178 DPR 163, 175 (2010). Por tanto, la revisión judicial de una determinación administrativa se circunscribe a determinar si: (1) el remedio concedido por la agencia fue apropiado; (2) las determinaciones de hechos realizadas por la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo, y (3) las conclusiones de derecho fueron correctas. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675; *Torres Rivera v. Policía de PR*, 196 DPR 606, 626-627 (2016).

Por otra parte, nuestro Tribunal Supremo ha identificado circunstancias en que corresponde no observar tal deferencia hacia el dictamen administrativo. En específico, dicho alto Foro ha reconocido que la deferencia a las determinaciones administrativas cederá cuando: (1) la decisión no está basada en evidencia sustancial; (2) el organismo administrativo ha errado en la aplicación de la ley, y (3) ha mediado una

actuación irrazonable o ilegal. *Acarón et al v. D.R.N.A.,* 186 DPR 564, 584 (2012)*; Costa Azul v. Comisión,* 170 DPR 847, 852 (2007)*.*

**B. Reglamento de Procedimiento Adjudicativos del DACo**

El 14 de junio de 2011, el DACo adoptó el Reglamento Núm. 8034, *Reglamento de Procedimientos Adjudicativos* (Reglamento Nún. 8034). Este reglamento aplica a toda investigación y procedimiento administrativo sobre querellas iniciadas por consumidores o por el DACo. Regla 3 del Reglamento Núm. 8034. Su propósito es asegurar la solución justa, rápida y económica de las querellas presentadas ante o por la agencia y proveer un procedimiento uniforme para su adjudicación. Regla 1 del Reglamento Núm. 8034.

La Regla 20 del Reglamento Núm. 8034 regula lo relativo a las vistas administrativas. En lo pertinente, la Regla 20.2 dispone que:

> El Departamento fijará la fecha y la notificará por escrito a las partes, que será no antes de quince (15) días de dicha notificación, a menos que las partes pacten otra fecha, con la anuencia del Juez u Oficial Administrativo, Secretario, o Panel de Jueces que presida los procedimientos. Se le apercibirá al querellante que, si no comparece a la vista, el Departamento podrá ordenar la desestimación y archivo de la querella por abandono. Si el querellado no comparece se podrán eliminar sus alegaciones. El Departamento podrá también condenar el pago de honorarios de abogado o dictar cualquier otra orden que en Derecho proceda.

Por otra parte, la Regla 23 del Reglamento Núm. 8034 autoriza al DACo a imponer sanciones. La precitada regla dispone en específico, que:

> Cuando una Parte dejare de cumplir con un procedimiento establecido en este reglamento, o una orden del Secretario, Funcionario, Secretario o Panel de Jueces que presida la vista administrativa podrá a iniciativa propia o a instancia de parte imponer una sanción económica a favor del Departamento o de cualquier parte, que no excederá doscientos (200) dólares por cada imposición separada a la parte o a su abogado, si este último es responsable del incumplimiento. **Si la parte sancionada incumple con el pago de la sanción se podrá ordenar la desestimación de su querella si es el querellante** o eliminar sus alegaciones si es el querellado. (Énfasis provisto). *Íd.*

La Sección 3.21 de la LPAU, 3 LPRA sec. 9661, resulta cónsona con la Regla 23 del Reglamento Núm. 8034 citada, en tanto autoriza que, en su

carácter cuasijudicial, las agencias puedan imponer sanciones en los siguientes casos:

(a) Si el promovente de una acción, o el promovido por ella, dejare de cumplir con las reglas y reglamentos o con cualquier orden del jefe de la agencia, del juez administrativo o del oficial examinador, la agencia a iniciativa propia o a instancia de parte podrá ordenarle que muestre causa por la cual no deba imponérsele una sanción. La orden informará de las reglas, reglamentos u órdenes con las cuales no se haya cumplido, y se concederá un término de veinte (20) días, contados a partir de la fecha de notificación de la orden, para la mostración de causa. De no cumplirse con esa orden, o de determinarse que no hubo causa que justificare el incumplimiento, entonces se podrá imponer una sanción económica a favor de la agencia o de cualquier parte, que no excederá de doscientos (200) dólares por cada imposición separada, a la parte o a su abogado, si este último es el responsable del incumplimiento.

(b) Ordenar la desestimación de la acción en el caso del promovente, o eliminar las alegaciones en el caso del promovido, **si después de haber impuesto sanciones económicas y de haberlas notificado a la parte correspondiente, dicha parte continúa en su incumplimiento de las órdenes de la agencia**.

(c) Imponer costas y honorarios de abogados, en los mismos casos que dispone la Regla 44 de Procedimiento Civil, según enmendada. *Íd.*

## III.   **Aplicación del Derecho a los hechos**

Por estar íntimamente relacionados, discutiremos en conjunto los dos señalamientos de error alzados por el recurrente. El señor Dueño Jesurún asevera que incidió el DACo en ordenar el cierre y archivo de su *Querella,* lo que constituyó un abuso de discreción.  Tiene razón.

En primer término, la lectura conjunta de la Sección 3.21 de la LPAU y la Regla 23 del Reglamento Núm. 8034, según las citamos en la exposición de derecho, revela que en los procesos administrativos se impone al Juez Administrativo una serie de pasos antes de ordenar el cierre y archivo de una querella. Así, previo a que el Juez Administrativo ordene el archivo de la querella por causa de que las partes incumplan con sus órdenes, este tiene que: (1) conceder un término de veinte (20) días para que la parte incumplidora muestre causa por la cual no se le deba imponer una sanción monetaria; (2) si no mostrare causa, o no contare con una

causa justificada, imponer la sanción monetaria; (3) de no cumplir con la sanción monetaria, entonces ordenar el archivo y cierre de la causa.

Lo afirmado no entra en contradicción con la Regla 22 del Reglamento Núm. 8034, en la que se habilita al Juez Administrativa a ordenar el cierre y archivo de una querella por abandono, sino que condiciona esta acción a un proceso que realmente vele por proveer oportunidad a la parte de comparecer, antes de declarar el cierre de la querella. En este sentido, luego de que se cumpla el proceso previsto en la Sección 3.21 de la LPAU y la Regla 23 del Reglamento Núm. 8034 citadas, entonces el foro administrativo quedará colocado en posición para determinar si procede ordenar el cierre y archivo de la querella.

Como lo demuestra el tracto procesal, la tercera Juez Administrativa que intervino en este caso se limitó a consignar que el recurrente había incumplido con las órdenes dimanantes de la *Resolución* de 26 de marzo de 2024, y que no había comparecido, ni llamado para excusarse, a la vista de 15 de mayo de 2024, por lo cual ordenó el cierre y archivo de la querella.

Salta a la vista que, antes de desestimar la *Querella*, la Juez Administrativa no advirtió al recurrente sobre la imposición de sanciones económicas, como tampoco le impuso sanción económica alguna, sino que, prescindiendo de tales pasos, se decidió por su cierre y archivo. Al actuar así, el foro recurrido incidió. Cabe aquí recalcar que las agencias administrativas no pueden actuar de forma arbitraria o caprichosamente al aplicar sus reglamentos a casos particulares. *Benítez Nieves. ELA et al.,* 202 DPR 818, 828 (2019). Por lo cual, desestimar la querella como primera opción, sin acudir antes a las opciones menos onerosas previstas por la LPAU y el propio Reglamento de DACo citado, constituyó una decisión irrazonable.

Aunque lo anterior resulta suficiente en derecho para revocar la *Resolución* recurrida, no pasa inadvertido que, en cualquier caso, el recurrente sí había demostrado disposición en defender sus intereses en el proceso seguido justo antes de que se desestimara su querella. En este

sentido, el señor Dueño Jesurún: presentó la *Querella* el 28 de diciembre de 2022; asistió a la inspección citada por el DACo; presentó la prueba con la que contaba para demostrar su caso en la Vista Administrativa celebrada el 26 de septiembre de 2023, que resultó interrumpida por causas ajenas a este.

Contrario a tal diligencia mostrada por el recurrente, fue el DACo quien: (1) decidió conceder la oportunidad al recurrido de buscar representación legal, **luego del recurrente haber pasado toda su prueba en la vista administrativa en su fondo**; (2) **perdió la grabación de dicha vista administrativa en su fondo, postergando innecesariamente el proceso**. La Juez Administrativa en este caso bien pudo haber sopesado tales circunstancias, no atribuibles al recurrente, antes de decidirse por ordenar cerrar y archivar la *Querella*. A fin de cuentas, los procesos adjudicativos ante las agencias no escapan a la política pública en favor de que los casos se ventilen en sus méritos.

En definitiva, procede revocar la *Resolución* recurrida, en tanto resulta contraria a los preceptos legales discutidos e irrazonable.

**IV. Parte Dispositiva**

Por los fundamentos expuestos, *Revocamos* la *Resolución* recurrida y ordenamos la devolución del asunto al DACo para la continuación de los procedimientos.

Lo acordó el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones